[Cite as *State v. Dodson*, 2019-Ohio-2084.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-541 |
| v. | : | (C.P.C. No. 16CR-2539) |
| Devin J. Dodson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 28, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Jeremy A. Roth*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Defendant-appellant, Devin J. Dodson, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of having a weapon while under disability, a felony of the third degree. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 10, 2016, appellant was indicted on one count of having a weapon while under disability, in violation of R.C. 2923.13. The events giving rise to the indictment occurred on January 27, 2016, when police officers executed a search warrant for a residence located at 4671 East Main Street, apartment 22.

{¶ 3} Officers became interested in the apartment after they witnessed appellant making suspected drug sales out of a black Chevrolet Camaro in parking lots located in the

4600 block of East Main Street.  Officers determined the Camaro was typically parked at an apartment building located at 4671 East Main Street.  The Camaro was registered to appellant's brother, Ryan Dodson.

{¶ 4}  On January 25, 2016, Sergeant Dennis Allen of the Whitehall Police Department entered the apartment building and "noticed a strong smell of burning marijuana * * * coming from apartment #22."  (State's Ex. F-1.)  Allen heard a male voice inside apartment 22 say "I'm putting on my shoes, I got you bro," and "[i]f you want more I can get what you want" and then observed Dodson exit apartment 22.  (State's Ex. F-1.)  The apartment management informed Allen that apartment 22 was leased to Kelsey Arnold.

{¶ 5}  On January 27, 2016, officers were maintaining surveillance on the Camaro in the apartment building parking lot.  When appellant exited the apartment building and approached the Camaro, officers detained him and placed him in handcuffs.  Appellant presented "himself as Devin Dodson" and provided officers with his identification.  (May 9, 2017 Tr. at 73.)  Officers found a mason jar containing marijuana in appellant's coat pocket.  Inside the Camaro, officers found empty mason jars, "a plastic kitchen heat seal device in the trunk," and a "storage locker key * * * on the floorboard of the car."  (May 9, 2017 Tr. at 25.)

{¶ 6}  Appellant informed the officers that "he had come from Apartment 22" and that "nobody else was inside" the apartment.  (May 9, 2017 Tr. at 27, 28.)  Appellant stated "the apartment wasn't his, that it was Kelsey's," to which Allen replied "Kelsey Arnold, is that your girlfriend?  And [appellant] replied yes."  (May 9, 2017 Tr. at 21, 27.)  Appellant had keys to apartment 22 on the same key ring as the Camaro keys.  Officers used the keys obtained from appellant to enter the apartment.

{¶ 7}  Inside the apartment, officers discovered two firearms, marijuana, hashish, a digital scale, and single serving narcotics bags.  The firearms were located inside and behind a large leather sofa located in the living room.  Allen explained that "[i]n the middle of that sofa was an armrest.  The armrest opens.  And there's a compartment for storage there.  Next to that armrest, there are two cup holders."  (May 9, 2017 Tr. at 41.)  A credit card bearing appellant's name "was found in one of the cup holders on that sofa."  (May 9, 2017 Tr. at 41.)  Inside the closed armrest storage compartment, officers found a 40-caliber

Taurus pistol. Behind the sofa, officers found an AK-47 semiautomatic rifle. A firearm examiner from the Bureau of Criminal Identification determined that both firearms were operable.

{¶ 8} Officers discovered a traffic citation and complaint from December 2015 in "the name of Devin Dodson" on the dining room table. (May 9, 2017 Tr. at 36.) On the refrigerator, officers discovered a piece of paper titled "Bill List." (State's Ex. G.) The list had columns titled "[w]ho I owe," "[d]ay [d]ue," and "[a]mounts." (State's Ex. G.) The "[w]ho I owe" column listed Uncle Bob's Storage, rent, car payment, Time Warner, T-Mobile, Boost Mobile, electric, and gas. In the bedroom closet, officers discovered two Time Warner Cable bills, both addressed to "Devin Dodson, 4671 East Main Street, Apartment No. 22." (May 9, 2018 Tr. at 37.) Officers also found "two cellular phones" in appellant's possession. (May 9, 2017 Tr. at 40.) Appellant had a business card for Uncle Bob's Storage in his wallet.

{¶ 9} On investigation, officers discovered appellant was leasing storage unit No. 256 from Uncle Bob's Storage. After obtaining a search warrant, officers discovered Blazer 9mm ammunition, a carrying box for a Glock pistol, a bulletproof vest, and $6,000 cash in the storage unit.

{¶ 10} At the conclusion of trial, the jury returned a verdict finding appellant guilty of the crime charged in the indictment. The court sentenced appellant to 36 months of community control under intensive supervision.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellant appeals, assigning the following errors for our review:

> 1. The trial court erred when it entered judgment against Appellant when there was not sufficient evidence to support the guilty verdict and conviction of Appellant, in violation of his due process rights under the Ohio and United States Constitutions.
>
> 2. The trial court erred when it entered judgment against Appellant when the guilty verdict returned by the jury was against the manifest weight of the evidence in violation of his due process rights under the United States and Ohio Constitutions.

3. Appellant was deprived of a fair and impartial trial due to ineffective assistance of counsel by counsel's failure to object to the court's dismissal for cause of Juror [C].

## III. DISCUSSION

### A. First Assignment of Error

{¶ 12} Appellant's first assignment of error asserts that the jury's verdict was not supported by sufficient evidence.

{¶ 13} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Kurtz* at ¶ 15. In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 14} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). "Further, 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *Patterson* at ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *See also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

{¶ 15} R.C. 2923.13 defines the crime of having a weapon while under disability in relevant part:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> * * *
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶ 16} At trial, the parties stipulated appellant had a previous conviction for a felony drug abuse offense. Appellant presents no argument regarding his prior conviction; rather, appellant contends plaintiff-appellee, State of Ohio, failed to present sufficient evidence demonstrating that he knowingly possessed the firearms located inside the apartment.

{¶ 17} In order to "have" a firearm under R.C. 2923.13, one must either actually or constructively possess the firearm. *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 121. "A person has actual possession of an item when it is within his immediate physical control." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 27 (10th Dist.). " 'Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' " *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 32, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

{¶ 18} "Dominion and control over an object 'may be proven by circumstantial evidence alone.' " *State v. Walker*, 10th Dist. No. 14AP-905, 2016-Ohio-3185, ¶ 71, quoting *State v. Trembly*, 137 Ohio App.3d 134, 141 (8th Dist.2000). "[T]he surrounding facts and circumstances, including defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession." *Pilgrim* at ¶ 27.

{¶ 19} As the firearms were not found in appellant's immediate physical possession, the issue resolves to whether the evidence sufficiently demonstrates appellant's constructive possession of the firearms. Appellant informed the officers on January 27, 2016 that he had just come from apartment 22 and that no one else was inside the

apartment. Appellant had a key to the apartment on his key ring. Appellant admitted that Kelsey Arnold, the named tenant on the lease for the apartment, was his girlfriend. However, the majority of the clothes found in the apartment were male clothing. Allen noted that officers discovered only "two pieces of [female] clothing" in the entire apartment. (May 9, 2017 Tr. at 81.) Officers also discovered a shoe box with "the name Dodson on it" in the apartment. (May 9, 2017 Tr. at 61.) Appellant's mail, traffic citation, credit card, and list of bills were discovered in various locations throughout the apartment. Such evidence demonstrated that appellant was residing in the apartment and that he had control over the objects within the apartment. *See State v. Divens*, 10th Dist. No. 12AP-326, 2013-Ohio-671, ¶ 17; *State v. Pitts*, 4th Dist. No. 99 CA 2675 (Nov. 6, 2000).

{¶ 20} However, " 'the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession.' " *Divens* at ¶ 10, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982). To establish constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." *Hankerson* at 91. Appellant asserts because the firearms were concealed from plain view, the evidence was insufficient to establish he was consciously aware of their presence.

{¶ 21} Possession of a firearm "may be inferred when the defendant has exercised dominion and control over the area in which the firearm is found." *State v. Williams*, 10th Dist. No. 97APA02-255 (Sept. 30, 1997) (finding the evidence sufficient to allow the jury to infer the appellant possessed the firearm, "since mail bearing" the appellant's name "was found under the plate of crack cocaine and next to the handgun," and the gun was found next to appellant's "drivers' license and his mail"). *See also Dorsey* at ¶ 33 (concluding "appellant had the ability to easily exercise dominion and control over the firearm" located in the vehicle he was driving, as the firearm was located "in between the console and the side of the passenger seat inside a piece of carpet that came up the side of the console" and "in close proximity to the gear shift").

{¶ 22} Officers discovered appellant's credit card in the cup holder on the sofa. The credit card was located "within inches" of the pistol in the armrest compartment. (May 9, 2017 Tr. at 42.) The AK-47 was behind the sofa. The presence of appellant's credit card on the sofa was circumstantial evidence demonstrating that appellant exercised dominion and control over the area where the firearms were found. Moreover, although the firearms were

not in plain view, they were readily accessible to appellant while seated on the couch in the apartment. *See State v. English*, 1st Dist. No. C-080872, 2010-Ohio-1759, ¶ 33 (finding the evidence demonstrated English's constructive possession of the firearm, as the "revolver was located in a room containing English's personal belongings, including drugs that he had exercised control over, and the revolver's location was such that English had immediate access to it"); *State v. Hooks*, 12th Dist. No. CA2000-01-006 (Sept. 18, 2000) (observing, even when drugs are hidden in a residence, "it may be inferred that the defendant was able to exercise dominion and control over the drugs when they are readily accessible to the defendant").

{¶ 23} The evidence also demonstrated appellant's knowledge of other items hidden in the apartment. During their search, officers discovered "a hard brown colored substance" which was "kind of hidden away" in the kitchen pantry. (May 9, 2017 Tr. at 39, 40.) As the officers were inspecting the substance, they mentioned between themselves that it appeared to be "tar heroin, to which [appellant] replied, that's not heroin, that's dab." (May 9, 2017 Tr. at 40.) Allen explained that dab is "just a hard form of marijuana." (May 9, 2017 Tr. at 39.) As appellant was aware of the contents of the dark brown substance hidden in the kitchen pantry, a jury could reasonably infer that appellant was aware of other items concealed throughout the apartment, including the firearms.

{¶ 24} Appellant contends the evidence was insufficient to demonstrate his possession of the firearms because the state did not produce fingerprint or DNA evidence linking him to the firearms. Although officers did take a DNA sample from appellant, Allen explained the state did not "do any swabs" or "take any type of identification or anything off the * * * two weapons." (May 9, 2017 Tr. at 81.)

{¶ 25} The jury heard the evidence demonstrating that appellee did not test the firearms for fingerprints or DNA material and could consider the absence of such forensic evidence in weighing the credibility of the witnesses. *See State v. Sieng*, 10th Dist. No. 18AP-39, 2018-Ohio-5103, ¶ 52 (stating the state's failure "to produce fingerprint or DNA evidence connecting appellant to the gun" resolved to "an issue of [witness] credibility"). Arguments concerning witness credibility are matters relevant to the weight, rather than the sufficiency, of the evidence. *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 33.

{¶ 26} Viewing the evidence in a light most favorable to appellee, a rational trier of fact could have found that appellant possessed the firearms beyond a reasonable doubt. The surrounding facts and circumstances demonstrated appellant's mail and personal effects were present throughout the apartment, appellant had knowledge of items hidden within the apartment, and appellant's credit card was on the sofa where the firearms were located. Accordingly, appellee presented sufficient circumstantial evidence which, if believed, demonstrated appellant had exercised dominion and control over the firearms. As appellant's previous felony drug abuse conviction was a qualifying disability, the evidence was legally sufficient to support appellant's conviction for having a weapon while under disability.

{¶ 27} Based on the foregoing, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 28} Appellant's second assignment of error asserts the jury's verdict was against the manifest weight of the evidence.

{¶ 29} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins*, 78 Ohio St.3d at 387. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶ 30} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson*, 2016-Ohio-7130, at ¶ 34, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 31} In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *discretionary appeal not allowed*, 140 Ohio St.3d 1455, 2014-Ohio-4414, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

{¶ 32} Appellant contends the weight of the evidence demonstrated he did not reside at the apartment or have any knowledge of the firearms. Specifically, appellant states the following evidence demonstrated his lack of connection to the apartment where the firearms were found: the addresses listed on the traffic citation and storage unit lease agreement and the 9mm ammunition found in the storage unit.

{¶ 33} The traffic citation listed appellant's address as 1309 McKahan Avenue, Columbus, Ohio. The storage unit lease agreement listed appellant's address as 5843 McKahan Court, Columbus, Ohio. However, the traffic citation was physically present in the apartment where the firearms were located, and Uncle Bob's Storage, where appellant had a storage unit, was identified on the bill list hanging on the refrigerator in the apartment. Additionally, appellant signed the lease agreement for the storage unit on June 24, 2014, one and one-half year before the events at issue. Allen explained to the jury that an officer issuing a traffic citation will typically write the address appearing on the driver's license on the citation, noting that such address may differ from the driver's current address. The jury was free to weigh the evidence of the addresses listed on the traffic citation and the storage unit rental agreement against the other evidence demonstrating that appellant lived at the apartment, including the two Time Warner Cable bills addressed to appellant at the 4671 East Main Street, apartment 22 address.

{¶ 34} Appellant notes the 9mm ammunition found in the storage unit "would not work in either of the firearms located in the apartment." (Appellant's Brief at 15.) However, the firearms in the apartment were each discovered with their corresponding caliber of ammunition. The Taurus pistol was "[l]oaded and chambered" when officers discovered it in the sofa. (May 9, 2017 Tr. at 56.) The AK-47 was discovered with a "magazine" and "live ammunition." (May 9, 2017 Tr. at 43.) The firearm examiner stated the Taurus pistol was submitted for testing with "10 40 Smith & Wesson cartridges" and that the AK-47 was submitted with "28 7.62 by 39 cartridges[,] * * * the size of the cartridges that this particular rifle [was] designed to fire." (May 9, 2017 Tr. at 108, 109.)

{¶ 35} After reviewing the entire record, we find nothing to indicate the jury clearly lost its way or that any miscarriage of justice resulted as to require a new trial. The record reflects substantial, credible evidence from which the trier of fact could have reasonably concluded that all elements of the charged crime had been proven beyond a reasonable doubt, including that appellant constructively possessed the firearms present in the apartment. Accordingly, appellant's conviction for having a weapon while under disability was supported by the manifest weight of the evidence.

{¶ 36} Based on the foregoing, appellant's second assignment of error is overruled.

## C. Third Assignment of Error

{¶ 37} Appellant's third assignment of error asserts that his trial counsel rendered constitutionally ineffective assistance by failing to object to the court's dismissal of Juror C.

{¶ 38} "The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel." *State v. Belmonte*, 10th Dist. No. 10AP-373, 2011-Ohio-1334, ¶ 8, citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Courts employ a two-step process in determining whether the right to effective assistance of counsel has been violated. *Belmonte* at ¶ 8, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must first demonstrate that counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Belmonte* at ¶ 8. The defendant must then demonstrate that the deficient performance prejudiced the defense. This requires showing counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable. *Id.*, citing *Strickland* at 687. The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Strickland* at 697.

{¶ 39} "An attorney properly licensed in the state of Ohio is presumed competent." *Belmonte* at ¶ 9, citing *State v. Lott*, 51 Ohio St.3d 160, 174 (1990). The defendant bears the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be considered sound trial strategy. *Belmonte* at ¶ 9, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). In demonstrating prejudice, the defendant must prove there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Belmonte* at ¶ 9, citing *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶ 40} After deliberations began, the jury informed the court that it was unable to come to a unanimous decision. The court provided the jury with a supplemental jury instruction pursuant to *State v. Howard*, 42 Ohio St.3d 18 (1989). After providing the *Howard* charge, the court noted that, as it was "getting late in the day," the jury might want to "consider whether or not [they were] at a good breaking point for today," and they could "restart tomorrow." (May 10, 2017 Tr. at 61.) The jury, however, resumed its deliberations.

{¶ 41} Sometime thereafter, the court received a note from Juror C stating she needed to leave to take a friend to the hospital. Juror C explained to the court that her friend had previously "hurt themselves" and that she did not know if her friend would "let themselves be taken to the hospital" by the emergency squad. (May 10, 2017 Tr. at 63.) Appellee asked Juror C if the issue regarding her friend was separate from anything going on in the jury room, and Juror C responded "[y]eah. * * * Things are fine going on in the jury room." (May 10, 2017 Tr. at 64.) The court and defense counsel both noted that Juror C appeared sincere in her request to leave. The court dismissed Juror C for cause, replaced her with an alternate juror, and instructed the jury to begin its deliberations anew. Neither party objected to the court's decision to dismiss Juror C.

{¶ 42} Appellant states "it was error to simply not permit the jury to retire for the day and allow Juror [C] to deal with the personal emergency involving her friend and return in the morning to resume deliberations." (Appellant's Brief at 17-18.) However, the court informed the jury they could break for the day when the court issued the *Howard* charge.

The jury chose to continue its deliberations. The record does not demonstrate any deficient performance from counsel in this respect.

{¶ 43} The "failure to make objections does not constitute ineffective assistance of counsel *per se*, as that failure may be justified as a tactical decision." (Emphasis sic.) *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995). Alternate jurors "have the same qualifications," are subject "to the same examination and challenges, take the same oath, and have the same functions, powers, facilities, and privileges as the regular jurors." Crim.R. 24(G)(1). Thus, the alternate juror was as capable as Juror C to consider the evidence presented at trial. *See State v. Hutton*, 53 Ohio St.3d 36, 45 (1990). Both the court and counsel noted Juror C's apparent sincerity, and there is no indication that an objection to the removal of Juror C would have been successful. The record fails to demonstrate any deficient performance by counsel in failing to object to the dismissal of Juror C.

{¶ 44} Moreover, appellant cannot establish that, but for the removal of Juror C, the verdict would have been different. " 'As a general rule, no one – including the judge presiding at a trial – has a "right to know" how a jury, or an individual juror, has deliberated or how a decision was reached by a jury or juror.' " *State v. Robb*, 88 Ohio St.3d 59, 81 (2000), quoting *United States v. Thomas*, 116 F.3d 606, 618 (2nd Cir.1997). Appellant's contention that the outcome of the trial would have been different had Juror C remained on the jury is purely speculative. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 314 (noting the appellant's "assertion that the juror was a holdout [was] purely speculative, so he [could not] establish prejudice").

{¶ 45} Appellant fails to establish that he was deprived of the effective assistance of counsel. Based on the foregoing, appellant's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 46} Having overruled appellant's first, second, and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., SADLER, and BRUNNER, JJ., concur.

_____