[Cite as *State ex rel. Crabtree v. Hoying*, 2024-Ohio-3415.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. J.R. Crabtree, | : | |
| Relator, | : | |
| v. | : | No. 24AP-45 |
| | : | (REGULAR CALENDAR) |
| Lisa Hoying, | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on September 5, 2024

**On brief:** *J.R. Crabtree*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Marcy A. Vonderwell*, for respondent.

IN MANDAMUS

BEATTY BLUNT, J.

{¶ 1}  Relator, J.R. Crabtree, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Lisa Hoying, chair of the Ohio Parole Board ("parole board"), to vacate the order finding relator violated the terms of his postrelease control and to enter an order finding insufficient evidence was presented to find relator guilty of the charged violation.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found there is sufficient evidence in the record to support the parole board hearing officer's finding that relator committed a violation of Rule 4 of the terms of

his post release control.  The magistrate further found that because the postrelease control violation was supported by sufficient evidence, relator has failed to establish a clear legal right to the requested relief or that respondent was under a clear legal duty to provide such relief.  Accordingly, the magistrate recommended this court deny relator's request for a writ of mandamus.

{¶ 3}   No objections have been filed to the magistrate's decision.  "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).

{¶ 4}   Upon review, we have found no error in the magistrate's findings of fact or conclusions of law or other defect evident on the face of the magistrate's decision. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and the conclusions of law therein, and conclude that relator has not shown he is entitled to a writ of mandamus and therefore his request for same is denied.

*Writ of mandamus denied.*

MENTEL, P.J. and JAMISON, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. J.R. Crabtree, | : | |
| Relator, | : | |
| v. | : | No. 24AP-45 |
| | : | |
| Lisa Hoying, | : | (REGULAR CALENDAR) |
| Respondent. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 24, 2024

*J.R. Crabtree,* pro se.

*Dave Yost*, Attorney General, and *Marcy A. Vonderwell*, for respondent.

IN MANDAMUS

**{¶ 5}** Relator J.R. Crabtree seeks a writ of mandamus ordering respondent Lisa Hoying, chair of the Ohio Parole Board ("parole board"), to vacate the order finding relator violated the terms of his postrelease control and to enter an order finding insufficient evidence was presented to find relator guilty of the charged violation.

## I. Findings of Fact

**{¶ 6}** 1. At the time of the filing of this action, relator was an inmate incarcerated at the Lorain Correctional Institution in Grafton, Ohio.

**{¶ 7}** 2. Respondent is chair of the parole board. The parole board is an administrative section of the Ohio Adult Parole Authority ("APA"), which itself is a bureau-level administrative section of the Division of Parole and Community Services, which in

turn is a division of the Ohio Department of Rehabilitation and Correction ("ODRC"). *See* R.C. 5149.02.

{¶ 8}   3. Relator was initially released from confinement to postrelease control on May 12, 2023. While on postrelease control, relator was required to follow certain terms, which were listed on a form signed by relator on May 16, 2023. Among the terms of relator's postrelease control, relator agreed to abide by Rule 4, which provided as follows:

> I will not purchase, possess, own, use, or have under my control, or knowingly or with reckless disregard have access to, any firearms, ammunition, dangerous ordinance, devices used to immobilize or deadly weapons, or any device that fires or launches a projectile of any kind. I will obtain written permission from the Adult Parole Authority prior to residing in a residence where these items are securely located.

(Respondent's Evidence at 23.)[1]

{¶ 9}   4. On July 29, 2023, relator was driving a vehicle through Marion, Ohio accompanied by a passenger, who was seated in the front passenger seat of the vehicle. Officer Bryon Doubikin of the Marion Police Department recognized relator and initiated a traffic stop of the vehicle based on belief that relator was driving under a suspended license. Upon request of Officer Doubikin, a K9 unit of the Marion County Sheriff's Office was dispatched to the location.

{¶ 10}  Deputy Sam Staley of the Marion County Sheriff's Office arrived at the scene of the traffic stop and conducted a "free air sniff of the vehicle with Canine Comet." (Respondent's Evidence at 13.) In a narrative report attached to the police report filed after the traffic stop, Deputy Staley stated that "[u]pon sniffing the rear trunk seam Comet alerted by a deep breathing respiration change and indicated by sitting to the odor of a trained narcotic odor at the rear of the vehicle." (Respondent's Evidence at 13.)

{¶ 11}  Based on the probable cause determination of Deputy Staley, Officer Doubikin informed relator and the passenger that a search of the vehicle would be conducted and asked them to exit the vehicle. After relator and the passenger exited the

---

[1] Respondent's evidence consists of three separately numbered documents or sets of documents: an introduction; the affidavit of Michael Anderson, chief hearing officer of the parole board; and records from relator's postrelease control violation process. For clarity, references in this decision to "Respondent's Evidence" pertain to the separately numbered records from relator's postrelease control violation process.

vehicle, Officer Doubikin and Officer Bryce Lowry of the Marion Police Department began to search the vehicle. In a narrative report filed after the traffic stop, Officer Lowry stated:

> I began searching the passenger side. There was a black Calvin Klein sitting on the front passenger floorboard. Inside of this bag, I located a wallet for [the passenger], which had several cards belonging to her, including her social security card. There was also a wallet for [relator] in this bag. Also inside of the bag were two pieces to a glass pipe, which containing lots of white residue inside of it. I also located three Gabapentin pills, one Diazepam pill and a counterfeit $100 bill.
>
> As I continued to search the vehicle, I located a green and black backpack sitting on the rear passenger side seat. As I began looking through this bag, I observed the bottom of a handgun sticking out of it.

(Respondent's Evidence at 13.) Lieutenant Mike Kindell of the Marion Police Department reported to the scene of the traffic stop and observed a backpack inside the vehicle. Upon being shown the supposed firearm in the backpack by Officer Lowry, Lieutenant Kindell "checked the magazine and found that it was a BB/pellet gun." (Respondent's Evidence at 14.)

{¶ 12} Officer Doubikin stated that he advised relator of his Miranda rights and detained him. According to Officer Doubikin, relator stated that the bookbag belonged to the person who sold the vehicle to relator and the passenger. Relator initially denied knowledge of the contents of the bookbag. Officer Doubikin provided the following account of the conversation with relator:

> I asked [relator] about the firearm and he initially denied any knowledge of it being in the car. I asked if he thought [the person who sold the vehicle] would have left a firearm in the vehicle and he said that he never opened the book-bag. I asked him what book-bag the firearm was in and he said, "the green one in the back, if that's where you found it." He then said that [the person who sold the vehicle] told him there was a BB gun in the car in the bag. He told me again that [the person who sold the vehicle] did not obtain her property from the car. He reiterated that the license plate in the trunk, the book-bag and the purse belong to [the person who sold the vehicle]. [Relator] admitted that the firearm is a BB gun and that he had looked at it and took the magazine out of it. [Relator] also asked that we field test whatever is located in the vehicle, prior to any questioning regarding a controlled substance. I explained the discrepancies in the story to [relator] and

advised him he is at least under arrest for driving under a twelve-point suspension.

(Respondent's Evidence at 15.)

{¶ 13} 5. On September 22, 2023, APA notified relator that he had been charged with a violation of the terms of his postrelease control related to the July 29, 2023 traffic stop. Specifically, APA alleged relator committed the following postrelease control violation: "Rule 4.: On or about 7/29/23, in the vicinity of Marion, Ohio, you had in your possession/under your control a bb gun." (Respondent's Evidence at 2.)

{¶ 14} 6. APA Parole Officer Chad Hecker completed a violation report, which was signed on September 26, 2023. In the report, Hecker stated that "[o]n [September 22, 2023], this officer met with the subject at MCCC and served him with the VSP paperwork. The subject admitted to the violations and elected to waive the hearing for 270 days." (Respondent's Evidence at 7.)

{¶ 15} 7. A postrelease control violation hearing was held on September 27, 2023. On the same date, a parole board hearing officer issued a notice of findings of release violation hearing. In the notice, the hearing officer found there was substantial evidence to believe relator violated Rule 4 of the terms of his postrelease control by a preponderance of the evidence and considering the record as a whole.

{¶ 16} 8. Relator commenced this action by filing his petition for a writ of mandamus on January 18, 2024. In his petition, relator asserted that APA "had no right to charge me." (Petition at 2.) Relator stated there is no other way to receive the remedy sought in this action because parole board decisions are not appealable. Relator requested the following relief: "That a writ of mandamus issue to the Respondent directing them to take action as follows: to vacate the order finding [relator] violated the terms of post release control and to enter an order finding insufficient evidence was presented to find [relator] guilty of [the] charged violation." (Petition at 4.) Along with his petition, relator filed an affidavit of indigency in which he stated that because he is "indigent, unable to pay the Court's full filing fees and security deposit," he "seek[s] a waiver of the payment of the fees and deposit." (Relator's Aff. of Indigency at 2.)

{¶ 17} 9. Respondent filed a motion to dismiss on February 16, 2024. Respondent asserted that relator's petition should be dismissed for failing to state a claim upon which relief could be granted because relator failed to comply with the inmate filing requirements

in R.C. 2969.25(C). Respondent's motion was denied by magistrate's order on February 26, 2024.

{¶ 18} 10. Respondent's evidence was filed on March 27, 2024. Relator did not file a presentation of evidence. Following briefing, this matter was submitted to the magistrate for decision.

## II. Discussion and Conclusions of Law

{¶ 19} Relator argues insufficient evidence was presented to support a finding that he violated Rule 4 of the terms of his postrelease control.

## A. Due Process Requirements in Release Revocation Proceedings

{¶ 20} The Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution provide guarantees of due process of law. *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.*, 87 Ohio St.3d 325, 331 (1999) ("The Fourteenth Amendment to the United States Constitution prohibits any state from depriving 'any person of life, liberty, or property, without due process of law.' "); *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 422 (1994), citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544 (1941) (stating that the Ohio Constitution's " 'due course of law' provision" in Article I, Section 16 "is the equivalent of the 'due process of law' provision in the Fourteenth Amendment to the United States Constitution"). The revocation of release due to a postrelease control violation, like the revocation of parole, implicates a liberty interest and is, therefore, subject to certain procedural protections. *State ex rel. Barber v. Hoying*, 10th Dist. No. 23AP-71, 2023-Ohio-2204, ¶ 11. *See also Morrissey v. Brewer*, 408 U.S. 471, 484 (1972); *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 32, 2022-Ohio-1559, ¶ 18.

{¶ 21} Notably, "an individual subject to a revocation proceeding is not entitled to all the procedural rights accorded to a defendant in a criminal trial." *Barber* at ¶ 12. *See also Morrissey* at 480 (stating that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* at 481. "The minimal requirements of due process in revocation proceedings include, but are not necessarily limited to, the following: (1) written notice of the alleged violations;

(2) disclosure to the person subject to revocation of the evidence against them; (3) an opportunity to be heard in person and to present witnesses as well as documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer finds good cause to prohibit it; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to the evidence relied on and the reasons for revocation." *Barber* at ¶ 12, citing *State v. Cardinal*, 10th Dist. No. 09AP-623, 2010-Ohio-3836, ¶ 15. *See also* Ohio Adm.Code 5120:1-1-18(A)(5) (listing other rights for a releasee at a postrelease control release revocation hearing).

{¶ 22} Additionally, a postrelease control violation finding that results in the revocation of release must be based on sufficient evidence in order to satisfy the requirements of due process. *See Barber* at ¶ 27; *State ex rel. Braddy v. Hoying*, 10th Dist. No. 23AP-197, 2023-Ohio-2597, ¶ 20. *See also Mango* at ¶ 18. A decision finding that a releasee has violated the terms of postrelease control is supported by sufficient evidence where there exists "substantial evidence" to support the decision. *Mango* at ¶ 18. Substantial evidence exists where "the evidence presented by the APA, if believed, is sufficient to satisfy the burden of proof." *Id*. At release revocation proceedings for a postrelease control violation, a violation must be established by the preponderance of the evidence. *Braddy* at ¶ 21; Ohio Adm.Code 5120:1-1-18(A)(3). Thus, there exists substantial evidence—and, therefore, sufficient evidence—to support a finding of a postrelease control violation where the evidence presented by the APA, if believed, demonstrates the violation by a preponderance of the evidence. *Id*.

**B. Mandamus**

{¶ 23} A writ of mandamus is an extraordinary remedy " 'issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty.' " *State ex rel. Russell v. Klatt*, 159 Ohio St.3d 357, 2020-Ohio-875, ¶ 7, quoting R.C. 2731.01. *See State ex rel. Blachere v. Tyack*, 10th Dist. No. 22AP-478, 2023-Ohio-781, ¶ 13 (stating that the purpose of mandamus is to compel the performance of an act that the law specifically enjoins as a duty resulting from an office, trust, or station). In order for a writ of mandamus to issue, a relator must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondents to provide it, and (3) the lack of an

adequate remedy in the ordinary course of the law. *State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, ¶ 19. " 'Clear and convincing evidence' is a measure or degree of proof that is more than a preponderance of the evidence but less than the beyond-a-reasonable-doubt standard required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the fact sought to be established." *State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, ¶ 14, citing *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. A writ of mandamus may issue where an individual establishes that a postrelease control violation resulting in the revocation of release was based on insufficient evidence in violation of due process. *Braddy* at ¶ 20, citing *Barber* at ¶ 11.

### C. Analysis

{¶ 24} Relator asserts there was insufficient evidence to find he committed a violation of Rule 4 of the terms of his postrelease control. Specifically, relator argues there is insufficient evidence to demonstrate he actually or constructively possessed the BB gun that formed the subject of the Rule 4 violation. The parole board hearing officer determined that, considering the record as a whole, there existed substantial evidence to believe that relator violated Rule 4 of the terms of his postrelease control by a preponderance of the evidence. The hearing officer found that relator was aware of the items, including the BB gun, that were contained in the bags found in the vehicle.

{¶ 25} As this court explained in *Barber*, a person may knowingly possess an object through either actual or constructive possession. *Id.* at ¶ 16, citing *State v. Walker*, 10th Dist. No. 14AP-905, 2016-Ohio-3185, ¶ 63. "A person has actual possession of a substance or object 'when it is within [their] immediate physical control.' " *Walker* at ¶ 63, quoting *State v. Coffman*, 5th Dist. No. 07 CA A 08 0042, 2008-Ohio-2163, ¶ 25.

{¶ 26} Constructive possession exists "when an individual knowingly exercises dominion and control over an object," regardless of whether that object is within the person's immediate physical control. *State v. Hankerson*, 70 Ohio St.2d 87 (1982), at paragraph one of the syllabus. However, "the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession." *Id.* at 91. Instead, "[i]t must *also* be shown that the person was *conscious of the presence of the object.*" (Emphasis added.) *Id.* More than one person may be found to have joint

constructive possession of an item. *Barber* at ¶ 18. *See State v. Philpott*, 8th Dist. No. 109173, 2020-Ohio-5267, ¶ 67; *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976) (stating that possession may be "individual or joint, actual or constructive," but "[p]roof of control or dominion," through self or instrumentality of another, "is essential").

{¶ 27} Following *Hankerson*, Ohio courts have repeatedly considered the threshold for establishing constructive possession in cases involving firearms. This court has held that "[c]onstructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others." *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 32, citing *United States v. Clemis*, 11 F.3d 597, 600 (6th Cir.1993). Furthermore, "[p]ossession of a firearm 'may be inferred when the defendant has exercised dominion and control over the area in which the firearm is found.' " *State v. Dodson*, 10th Dist. No. 17AP-541, 2019-Ohio-2084, ¶ 21, quoting *State v. Williams*, 10th Dist. No. 97APA02-255, 1997 Ohio App. LEXIS 4467 (Sept. 30, 1997).

{¶ 28} With regard to the matter at hand, the magistrate finds there is sufficient evidence in the record to support the parole board hearing officer's finding that relator committed a violation of Rule 4 of the terms of his postrelease control. First, the record reflects relator admitted the violation to his parole officer when he was served with notice of the alleged violation.

{¶ 29} Second, relator argues that it is "absurd" to find that relator knew the BB gun was in the vehicle because relator denied having knowledge that the BB gun was in the vehicle. (Relator's Brief at 7.) According to Officer Doubikin, relator admitted knowing that "the firearm is a BB gun and that he had looked at it and took the magazine out of it." (Respondent's Evidence at 15.) Moreover, the BB gun was found in close proximity to relator. The BB gun was located in a bag found on the back seat of the vehicle that relator was driving. Although relator initially denied knowledge of the contents of the bag or the presence of the BB gun within it, a denial relator reiterates in this action, saying something doesn't make it so. The statements in Officer Doubikin's report, if believed, demonstrate that relator was aware of the presence of the BB gun and had exercised dominion and control over it. This is sufficient to establish constructive possession of the BB gun. *See Dodson* at ¶ 22.

{¶ 30} Third, relator also argues that the BB gun was not a "firearm" as that term is defined in the Ohio Revised Code. Relatedly, relator also argues he was improperly found to have committed a violation of Rule 4 because the BB gun "was not used in a commissioned offense." (Relator's Brief at 7.) Contrary to relator's contentions, Rule 4 does not prohibit only the possession of firearms, nor does it require that the prohibited object be used in the commission of an offense. Under Rule 4, relator was not permitted to, among other things, "possess, * * * use, or have under my control, or knowingly or with reckless disregard have access to, any firearms, * * * deadly weapons, or any device that fires or launches a projectile of any kind." (Respondent's Evidence at 23.) Relator admits that "a BB gun can be a deadly weapon." (Relator's Brief at 6.) Moreover, regardless of whether a BB gun is a deadly weapon, a BB gun is a device that fires or launches a projectile.[2] Relator does not contend otherwise. Therefore, since relator constructively possessed or knowingly had access to the BB gun found in the vehicle he was driving, relator's arguments regarding the inapplicability of Rule 4 are misplaced.

{¶ 31} In summary, the evidence presented by the APA, if believed, constituted substantial evidence in support of finding relator violated Rule 4 of the terms of his postrelease control by a preponderance of the evidence. Because the postrelease control violation was supported by sufficient evidence, relator has failed to establish a clear legal right to the requested relief or that respondent was under a clear legal duty to provide such relief.

## D. Conclusion

{¶ 32} Accordingly, it is the decision and the recommendation of the magistrate that relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

---

[2] A "BB" is commonly defined as "a shot pellet * * * for use in an air gun." *Merriam Webster's Collegiate Dictionary* 105 (11th Ed.2014). An "air gun" is commonly known as a "gun from which a projectile is propelled by compressed air." *Id*. *See Conneaut v. Babcock*, 11th Dist. No. 2021-A-0045, 2022-Ohio-2101, ¶ 18-20; *Taylor v. Webster*, 12 Ohio St.2d 53, 54 (1967) (describing a "BB air gun" as "a device from which, ordinarily, small round metal pellets are discharged through the release by a trigger of compressed air against them").

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.