[Cite as *State ex rel. Ball v. Indus. Comm.*, 2017-Ohio-1381.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Renee L. Ball, | : | |
| Relator, | : | |
| v. | : | No. 16AP-446 |
| The Industrial Commission of Ohio and Honda of America Mfg., Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on April 13, 2017

**On brief:** *Hochman, & Plunkett Co., L.P.A., Gary D. Plunkett* and *Rachael D. Siekman,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

**On brief:** *Vorys, Sater, Seymour and Pease LLP,* and *Robert A. Minor,* for respondent Honda of America Mfg., Inc.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1} Relator Renee L. Ball has filed an original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order which denied her application for working wage loss compensation and to find that she is entitled to that award.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this

court deny relator's request for a writ of mandamus.  No objections have been filed to that decision.

{¶ 3}   Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law.   In accordance with the magistrate's decision, we deny relator's requested writ of mandamus.

*Writ of mandamus denied.*

TYACK, P.J., and DORRIAN, J., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Renee L. Ball, | : | |
| Relator, | : | |
| v. | : | No. 16AP-446 |
| The Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Honda of America Mfg., Inc., | : | |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on January 19, 2017

*Hochman, & Plunkett Co., L.P.A., Gary D. Plunkett* and *Rachael D. Siekman,* **for relator.**

*Michael DeWine,* **Attorney General, and** *Eric J. Tarbox,* **for respondent Industrial Commission of Ohio.**

*Vorys, Sater, Seymour and Pease LLP,* **and** *Robert A. Minor,* **for respondent Honda of America Mfg., Inc.**

IN MANDAMUS

{¶ 4}   Relator, Renee L. Ball, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for working wage loss ("WWL") compensation and ordering the commission to find that she is entitled to that award.

Findings of Fact:

{¶ 5}   1.  On April 22, 1999, relator sustained a work-related injury while working for Honda of America Mfg., Inc. ("Honda"), and her workers' compensation claim has been allowed for:  "contusion right leg; sprain right knee/leg; mononeuritis right leg."

{¶ 6}   2.  As a self-insured employer, Honda paid relator a period of non-working wage loss ("NWWL") compensation in 2013.

{¶ 7}   3.  On January 20, 2014, relator filed an application seeking an award of NWWL compensation beginning December 2, 2013.

{¶ 8}   4. Relator's application was heard before a district hearing officer ("DHO") on February 26, 2014.  The DHO denied relator's request finding that her job search was not conducted in good faith:

> First and foremost, District Hearing Officer does not find credible medical evidence that the Injured Worker has restrictions which prevent her from returning to her former position of employment. The C-140 medical report, filed contemporaneous to the requested period of nonworking wage loss at issue, was completed by Dr. Trygstad on 08/21/2013. On this medical report, Dr. Trygstad indicated that he last examined the Injured Worker on 01/17/2013, which this District Hearing Officer finds was seven months prior to Dr. Trygstad completing this C-140 medical report. In addition, District Hearing Officer does not find the Injured Worker to have conducted a good faith job search for suitable employment. From this District Hearing Officer's review of the Injured Worker's C-141 Job Search Forms, District Hearing Officer finds two-thirds of her job contacts were made by telephone and only one-third of her contacts were made in person. It appears to this District Hearing Officer that the Injured Worker limited herself to approximately one personal contact per day and 15 total contacts per week. At hearing, this District Hearing Officer asked the Injured Worker to give an estimate as to how many hours per day she searched for work. She stated, at a minimum, "one solid hour". District Hearing Officer finds the former position of employment was full time work and the Injured Worker's job search was far from being full time in nature. Therefore, based on the above findings, this District Hearing Officer does not find the Injured Worker to have met her burden to establish her entitlement to

nonworking wage loss benefits under Ohio Administrative Code 4125-1-01.

{¶ 9} 5. Relator's appeal was heard before a staff hearing officer ("SHO") on April 10, 2014. The SHO modified the prior DHO order and yet still found that relator failed to establish a good-faith job search and denied the request for NWWL compensation:

> This Staff Hearing Officer notes that the Injured Worker testified, as memorized [sic] by the District Hearing Officer, at the District hearing level that she spent a minimum of "one solid hour" searching for employment. While at the Staff level the Injured Worker testified she spent six to eight hours a day searching for employment. As evidence of an alleged good faith job search the Injured Worker submitted C-141 forms indicating that the week ending 12/07/2013 she had 15 contacts for the week, over a three day period of these contacts 12 were made by telephone and three were in person. For the week ending 12/14/2013 the Injured Worker again made 15 contacts eight by telephone, seven in person, again over a three day period. For the week ending 12/21/2013 the Injured Worker again made 15 contacts, six by telephone, nine in person, again over a three day period. For the last week, ending 12/28/2013 the Injured Worker again made 15 contacts this time ten by telephone and five in person. Interestingly, of the 65 contacts made none were hiring. Further, while the Injured Worker alleges six to eight hours a day of involvement in job searches, job searches appear to have only been performed three days each week as contacts were only made three days per week. Thirty-six of these contacts were made by telephone and only 24 in person.
>
> This Staff Hearing Officer does not find this evidence is a good faith job search.
>
> This Staff Hearing Officer finds a good faith job search in which the Injured Worker was spending six to eight hours each day reviewing potential Employers and applying would be evidenced by at least one Employer to which she applied actually hiring at the time she applied. Further, 36 telephone contacts over a four week period is not evidence of a good faith job search during which the Injured Worker is spending six to eight hours a day in a job search.

Given that the Injured Worker contacted 65 Employers, none of whom were hiring per the Injured Worker's C-141 forms and more than the half of these contacts were made by telephone, this Staff Hearing Officer does not find that this evidence is a good faith job search. Clearly, the mere fact that the Employers were not hiring does not, by itself, negate the contacts. The difficulty arises in that the telephone contact would [sic] required merely a few minutes of the Injured Worker's time rather than hours. As such, these 36 telephone contacts are not found to constitute six to eight hours of daily job search. The Injured Worker did make 24 in person contacts. However, these contacts appear to stand alone as the telephone contacts are not found to have been in good faith. When the Injured Worker alleges she spends six to eight hours a day searching for a [sic] job contacts, this Staff Hearing Officer finds 24 contacts with Employers who are not hiring does not evidence a good faith job search of a six to eight a day basis [sic].

For the above reasons, the request for payment of non-working wage loss for the period of 12/02/2013 through 12/27/2013 is denied.

The remainder of the District Hearing Officer's order, not in conflict with this order, remains in full force and effect.

{¶ 10} 6. Relator's further appeal was refused by order of the commission mailed May 6, 2014.

{¶ 11} 7. In September 2015, relator's treating physician Richard Donnini, D.O., placed restrictions on her which limited her standing and walking, precluded climbing, and limited her to working 8 hours per day, 40 hours per week.

{¶ 12} 8. On December 8, 2015, relator filed the request for WWL compensation which is the subject of this mandamus action. Relator sought WWL compensation from the period May 16 through September 18, 2015. Relator attached medical records from Dr. Donnini which included the restrictions he placed on her, paystubs from NC Choices and Creative Foundations, evidence that she registered with the Ohio Department of Job and Family Services, a light-duty letter from Honda, an affidavit, and several pages representing her job search for the relevant period of time.

{¶ 13} 9. Relator's application was heard before a DHO on February 16, 2016. The DHO granted in part and denied in part relator's application, stating:

> The District Hearing Officer finds the Injured Worker has physical restrictions as set forth in the C-140 Medical Report, dated 05/18/2015, by Richard Donnini, D.O. The District Hearing Officer finds the Injured Worker returned to employment on 05/16/2015, to positions within the physical restrictions stated by Dr. Donnini, and has suffered a wage loss as a direct result of the industrial injury.
>
> The District Hearing Officer finds the Injured Worker's present earnings are less than the Injured Worker's wages were at the time of this industrial injury
>
> It is the order of the District Hearing Officer wage loss compensation is granted from 05/16/2015 through 07/24/2015. Wage loss compensation may continue upon the submission of evidence that documents an ongoing wage loss due to the industrial injury and this wage loss is a result of a medical impairment that is causally related to the industrial injury.
>
> Further, the District Hearing Officer denies wage loss compensation from 07/25/2015 through 09/18/2015. The District Hearing Officer finds this Injured Worker was employed during this period, however, was not engaged in full-time employment and therefore required to provide evidence of good faith job searching. The District Hearing Officer finds the submitted C-141 Wage Loss Statement for Job Search forms do not document sufficient contacts for this period. The Injured Worker testified at hearing she completes job applications online through websites posting job opportunities. The District Hearing Officer does not find evidence in the claim file to support the Injured Worker's testimony.
>
> Wage loss is payable at 66 2/3% of the difference between the Injured Worker's present earnings and the Injured Worker's Average Weekly Wage, not to exceed the Statewide Average Weekly Wage.
>
> Wage loss is authorized no longer then the time period specified in R.C. 4123.56.

> This order is based upon the aforementioned documents, in addition to the C-141s filed 12/08/2015.

{¶ 14} 10. Both relator and Honda filed appeals from the DHO order and the matter was heard before an SHO on March 29, 2016. The SHO vacated the prior DHO order and denied relator's request for WWL compensation in its entirety, stating:

> This Hearing Officer denies payment of working wage loss from 05/16/2015 through 07/24/2015 and from 07/25/2015 through 09/18/2015.
> This Hearing Officer acknowledges that that [sic] Injured Worker, during the periods of working wage loss at issue, worked in excess of 40 hours a week, for two employers in the attempt to mitigate the wage loss resulting from medical impairment that is causally related to the industrial injury. Further, this Hearing Officer finds the Injured Worker, in September of 2015, obtained employment with just one employer allowing her to work 70 hours per week and completely eliminate the wage loss.
>
> Although the Injured Worker should be commended on her efforts, this Hearing Officer does not find the Injured Worker to have met the requirements of the wage loss rule, in effect at the time of the inception of this claim, (Ohio Adm.Code 4125-1-01) for purpose of establishing her entitlement to working wage loss. The aforementioned code section requires an Injured Worker's application to be supplemented with wage loss statements describing the search for suitable employment. The statements are to include the address of each employer or contact, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact and the result of the contact. An Injured Worker who has not returned to suitable employment which is comparably paying work, is required to conduct a good faith effort to search for suitable employment, which is comparably paying work. In evaluating whether an Injured Worker has made a good faith effort, attention is given to the number, quality and regularity of contacts made by the Injured Worker with prospective employers, public and private employment services. From this Hearing Officer's review of the Injured Worker's C-141 wage loss statement for job search forms submitted to the claim, this Hearing Officer finds the Injured Worker only made prospective contacts, on average, once every five to seven days. This Hearing Officer finds these

> forms are incomplete in that they do not list an address, contact name, contact number or any specific information with respect to result of the contact. Although this Hearing Officer finds the Injured Worker's job efforts led to her most recent employment, they did not meet the requirements of Ohio Adm.Code 4125-1-01 so as to establish the [sic] her entitlement to working wage loss benefits.

{¶ 15} 11. Relator's further appeal was refused by order of the commission mailed April 21, 2016.

{¶ 16} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 17} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 18} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 20} Entitlement to wage loss compensation is governed by R.C. 4123.56(B), which provides:

> Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.

{¶ 21} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). This principle is equally applicable to claims for wage loss compensation. *State ex rel. The Andersons v. Indus. Comm.*, 64 Ohio St.3d 539 (1992). As noted by the court in *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118 (1993), a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.

{¶ 22} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and to base the determination on, evidence relating to certain factors, including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to both nonworking wage loss and working wage loss compensation. *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210; *State ex rel. Reamer v. Indus. Comm.*, 77 Ohio St.3d 450 (1997); and *State ex rel. Rizer v. Indus. Comm.*, 88 Ohio St.3d 1 (2000). A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.

{¶ 23} Ohio Adm.Code 4125-1-01(A) defines "suitable employment" and "comparably paying work" as follows:

> (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be

performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.

(8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.

{¶ 24} Ohio Adm.Code 4125-1-01(C) identifies for claimants the relevant information which must be contained in an application for wage loss compensation. Specifically, Ohio Adm.Code 4125-1-01(C)(5) provides:

(5) All claimants seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.

(a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.

(b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss application and/or any subsequent request for wage loss compensation in the same claim.

(c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's compensation or the self-insured employer during the period when wage loss compensation is received.

(d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.

(e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.

{¶ 25} Thereafter, Ohio Adm.Code 4125-1-01(D) provides, in pertinent part:

(D) The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied.

* * *

In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:

(1) The claimant's search for suitable employment.

(a) As a prerequisite to receiving wage loss compensation for any period during which such compensation is requested, the claimant shall demonstrate that he or she has:

(i) Complied with paragraph (C)(2) of this rule and, if applicable, with paragraph (C)(3) of this rule [relating to the submission of medical evidence];

(ii) Sought suitable employment with the employer of record at the onset of the first period for which wage loss compensation is requested. The claimant shall also seek suitable employment with the employer of record where there has been an interruption in wage loss compensation benefits for a period of three months or more; and

(iii) Registered with the Ohio bureau of employment services and begun or continued a job search if no suitable employment is available with the employer of record.

(b) A claimant may first search for suitable employment which is within his or her skills, prior employment history,

and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.

(c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work, except for those claimants who are receiving public relief and are defined as work relief employees in Chapter 4127. of the Revised Code. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss.

{¶ 26} Ohio Adm.Code 4125-1-01(D)(1)(c) provides certain relevant factors to be considered by the commission in evaluating whether claimant has made a good-faith effort. Those factors including: claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by claimant to accept assistance from the BWC in finding employment; any refusal by claimant to accept the assistance of any public or private employment agency; labor market conditions; claimant's physical capabilities; any recent activity on the part of claimant to change her place of residence and the impact such change would have on the reasonable probability of success and the search for employment; claimant's economic status; claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by claimant and whether that employment constitutes a voluntary limitation on claimant's present earnings; whether claimant restricts her search to employment that would require her to work fewer hours per week than she worked in the former position of employment; and whether, as a result of physical restrictions, claimant is enrolled in a rehabilitation program.

{¶ 27} In this mandamus action, relator argues that the commission abused its discretion by blindly adhering to technical requirements to find that she did not present evidence of a good-faith job search. Relator argues that the following facts outweigh any inadequacies in the documentation she presented: for a period of time she worked 2 jobs in excess of 40 hours per week, for a period of time she worked approximately 70 hours per week, and her job search ultimately led to her most recent employment. Further, relator points to certain statements contained in the SHO order. After noting that she worked 2 jobs and is currently working 70 hours per week to eliminate the wage loss, the SHO stated: "the Injured Worker should be commended on her efforts." After noting that, despite relator's failure to demonstrate a good-faith job search, she secured a job, the SHO further stated: "this Hearing Officer finds the Injured Worker's job efforts led to her most recent employment." Relator asserts the SHO found she had conducted a good faith search for suitable employment and then denied her WWL compensation because her paperwork was "less than perfect." (Relator's Reply Brief at 1.)

{¶ 28} The SHO specifically noted that relator's documentation demonstrated that she "only made perspective contacts, on average, once every five to seven days * * * [and] these forms are incomplete in that they do not list an address, contact name, contact number or any specific information with respect to result of the contact."

{¶ 29} Relator does not dispute the SHO's finding that she averaged one perspective employment contact every five to seven days, nor does she contest the finding that she failed to list the address, contact name, and contact number, or specific information with respect to several of her contacts. In 2014, relator's request for NWWL was denied because she did not demonstrate a good-faith job search. Relator was familiar with the requirements. The mere fact that relator ultimately secured employment thereby demonstrating that her job search was successful, does not, by default, establish that she made a good-faith effort as demonstrated by her consistent, sincere, and best attempts to obtain suitable employment to eliminate the wage loss. The requirements that relator list the company, contact person, telephone number, date, and method of contact is not, as relator suggests, a "mere technicality." (Relator's Reply Brief at 6.) This evidence allows her employer and the commission to consider the

quality of her contacts and also allows her employer to verify that she made these contacts. Relator simply has not demonstrated that the commission abused its discretion when it found that she failed to establish that she made a good-faith job search when she made so few contacts and when she failed to present sufficient evidence regarding those contacts.

{¶ 30} Based on the foregoing, it is the magistrate's decision that this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA


## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).