[Cite as *State ex rel. Joyce v. State Teachers Retirement Sys.* , 2021-Ohio-4279.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Beverly Joyce, | : | |
| Relator, | : | No. 20AP 507 |
| v. | | (REGULAR CALENDAR) |
| State Teachers Retirement System of Ohio, | : | |
| Respondent. | : | |

---

D E C I S I O N
Rendered on December 7, 2021

---

**On brief:**. *Herdman Yeager, LLC,* and *Carol Herdman,* for relator*.*

**On brief:**. *Dave Yost,* Attorney General*, Samuel A. Peppers, III,* and *Mary Therese J. Bridge,* for respondent.

---

IN MANDAMUS

JAMISON, J.

{¶ 1} Relator, Beverly Joyce, has filed an original action requesting this court issue a writ of mandamus ordering respondent, State Teachers Retirement System of Ohio ("'STRS'"), to vacate a decision by STRS board denying relator's application for disability benefits, and enter an order granting disability benefits.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny relator's request for a writ of mandamus. Relator filed no objections.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3}   Relator is a member of STRS through her employment as a high school teacher for the North Royalton City School District.  Relator submitted an undated application for STRS disability benefits that was received on March 29, 2019.

{¶ 4}   Relator submitted an attending physician report and extensive medical records with her disability application.  Relator's attending physician described two conditions that were disabling.  Relator's symptoms began suddenly on May 15, 2017.  After the onset of symptoms, relator has been treated by numerous health professionals, including attending physicians, physical therapist, and neurologists.  She has submitted to various tests, including, but not limited to, MRI, medication, and vestibular therapy.

{¶ 5}   By letter dated June 18, 2019, STRS' Medical Review Board notified relator that it recommended a denial of disability benefits.  In a letter dated August 16, 2019, STRS confirmed denial of disability benefits.  Relator timely appealed the STRS board's decision.

{¶ 6}   Relator submitted additional medical records in connection with her appeal. The Medical Review Board requested an additional examination by a neurologist who concluded that relator would not be physically or mentally incapacitated from her most recent job duties.

{¶ 7}   Relator provided additional documents for review by the neurologist who produced a second report and renewed his opinion as follows: "'Ms. Joyce's history, updated medical record review, and physical exam provide sufficient credible evidence that she is not disabled per the STRS Ohio definition of disability.'"  (Magistrate's Decision at ¶ 56.)  The STRS disability review panel heard relator's application on August 19, 2020 and upheld its previous determination to deny relator's disability applications.

{¶ 8}   Relator filed her complaint in mandamus on October 30, 2020.  On August 31, 2021, the magistrate issued a decision and recommendation.  The magistrate also provided notice to the relator of the opportunity under Civ.R. 53(D)(3) to object to the findings of fact and conclusions of law in the decision.

## II.  STANDARD OF REVIEW

{¶ 9}   "'If no timely objections are filed, the court may adopt a magistrate's decision unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision.'"  Civ.R. 53(D)(4)(c).  *See, e.g., State ex rel. Armengau v. French*, 10th Dist. No. 16AP-223, 2016-Ohio-5342, ¶ 3 ("'Finding no error or other defect on the

face of the magistrate's decision, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law."'). "'Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.'" Civ.R. 53(D)(4)(b).

## III. LEGAL ANALYSIS

{¶ 10}  Civ.R. 53(D)(3)(b) provides that:

> A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. If a party makes a timely request for findings of fact and conclusions of law, the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law.

{¶ 11}  Pursuant to Civ.R. 53(D)(4)(c), "'[i]f no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision.'"

{¶ 12} Accordingly, "'[f]inding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law.  In accordance with the magistrate's decision, we deny relator's requested writ of mandamus.'" *State ex rel. Ball v. Indus. Comm.*, 10th Dist. No. 16AP-446, 2017-Ohio-1381, ¶ 3.

*Writ of mandamus denied.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

_____

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Beverly Joyce, | : | |
| Relator, | : | |
| v. | : | No. 20AP-507 |
| State Teachers Retirement System of Ohio, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 31, 2021

*Herdman Yeager, LLC,* and *Carol Herdman,* for relator.

*Dave Yost,* Attorney General, *Samuel A. Peppers, III,* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS

{¶ 13} Relator, Beverly Joyce, seeks a writ of mandamus from this court ordering respondent, State Teachers Retirement System of Ohio ("'STRS"'), to vacate a decision by the STRS board denying relator's application for disability benefits, and enter an order granting such benefits.

Findings of Fact:

{¶ 14} 1. Relator is an STRS member through her employment as a high school teacher for the North Royalton City School District.

{¶ 15} 2.  Relator applied for STRS disability benefits.  Her undated application was received by STRS on March 29, 2019.  (Stip. at 6.)

{¶ 16} 3.  With her disability application, relator submitted an attending physician report and extensive medical records.  Ghai Lu, M.D., submitted an attending physician report describing his treatment for relator's condition of "'vertigo due to [bilateral] vestibular disorder,'" and treatment for dyslipidemia.  (Stip. at 15.)  Dr. Lu described both conditions as disabling.

{¶ 17} 4. Relator underwent an independent medical examination by Blaize O'Brien, M.D., on May 31, 2019.  (Stip. at 87.)  Dr. O'Brien's report, dated June 3, 2019, described relator's expressed complaints:

> Patient is a 39-year-old-female who is here for STRS evaluation for dizziness. She states that 2 years ago she woke up suddenly with the sensation that she was being pulled to the left. This persisted throughout the day. The next day she had severe spinning vertigo. She does not recall having any nausea or vomiting with this. She saw her ENT who found no obvious abnormalities. She went to the emergency room where she was given the diagnosis of "'vertigo.'" She subsequently has had extensive work-up. She at one point was told that she had vestibular neuronitis. An MRI showed no masses or lesions. She had a VNG which was normal. She had rotational chair test which was normal. She has been given the tentative diagnosis of vestibular migraines. She has been on [buspirone] with no benefit. She [has] seen neurology as well as neurotology. To this point no treatments or specific intervention helpful. The patient continues to feel that she gets pulled to the left frequently. The symptoms can fluctuate in intensity. She feels that she is not able to perform her normal daily activities. She works as a[n] English teacher and has lost of problems with movement. She feels she cannot drive effectively and her symptoms are exacerbated by reading. She has been in vestibular therapy with no significant improvement of her symptoms. At this point she is not having any headaches associated with the off-balance/pulling sensation and she feels that her migraines are under good control. She feels that reading fine print or walking down [an isle] such as a grocery store makes her symptoms worse.

{¶ 18} Dr. O'Brien reported the following assessment from his examination of relator and his review of her previous medical records:

> A sensation of constantly being "'pulled to the left'" of unclear etiology. I find no abnormalities on her physical examination. Testing performed including audiogram, MRI, VNG, and rotational testing have all been normal. Specifically I find no obvious otologic pathology. Given lack of physical exam evidence as well as lack of evidence on objective testing of a specific abnormality I do not believe this patient is disabled from any otolaryngologic pathology.
>
> I have no doubt that the patient is suffering and that her symptoms are real. However I can find no specific abnormality or give her any type of diagnosis or prognosis. I would suggest evaluation by a neurologist within the STRS system should she want to continue to pursue disability.

(Stip. at 87.)

{¶ 19} 5. Relator's symptoms began suddenly on May 15, 2017 when she woke up and felt as if her "'entire world was tilted to the left 90 degrees.'" (Tr. at 8.) Relator further described her initial symptoms:

> I fell out of bed, and everything looked like I was in a fun house. Everything was pulled and tilted to the left, and that feeling of being pulled or swayed to the left has never gone away since. I managed to go to work that day, and I had to meet with one of the assistant principals first thing in the morning because * * * I could barely even sit in the chair in his office. I had to clutch the arms of the chair to stay upright.

(Tr. at 8.)

{¶ 20} 6. Relator experienced difficulty walking down hallways or aisles of desks as part of her work, and symptoms would be triggered by the noise and activity when supervising the lunchroom. (Tr. at 8-9.) Her employer attempted to accommodate her

condition by rearranging classrooms with different desks but symptoms would still be triggered by unexpected movement in relator's peripheral vision. (Tr. at 9.) Relator also experienced severe symptoms when driving or looking at a computer monitor. (Stip. at 9-10.)

{¶ 21} 7. After the onset of symptoms, relator was treated by Steven Ball, M.D., on May 30, 2017 at the Cleveland Clinic. (Stip. at 66.) Dr. Ball's notes described her reported symptoms of "'tilting'" and nausea, which became worse with driving or computer use. Dr. Ball reviewed an MRI report dated June 7, 2017, which was negative for lesions. (Stip. at 67.)

{¶ 22} 8. Relator received chiropractic treatment from June to October 2017 with Shannon Francis, D.C. Relator also underwent physical therapy between June 2017 and April 2018 with various providers. (Stip. at 109, 146.) Relator continued to experience headaches, dizziness, and nausea. (Stip. at 110.) The treating physical therapist, Laurie Zimcosky, opined that relator suffered from cervicogenic headaches. (Stip. at 110, 112.) These did not improve with physical therapy and treatment. (Stip. at 22.)

{¶ 23} 9. Relator saw neurologist Deborah Ewing-Wilson, D.O., for the first time on December 6, 2017. (Stip. at 22.) Dr. Ewing-Wilson produced a report on the same date describing her observations. Dr. Ewing-Wilson noted that relator had been diagnosed Chiari malformation of the cerebellum following an MRI in 2012. (Stip. at 22.) Dr. Ewing-Wilson concluded by diagnosing relator with vestibular migraines and prescribed Buspirone at 10 milligrams daily, increased twice daily as needed. (Stip. at 26.) Dr. Ewing-Wilson also recommended supplements and avoidance of migraine triggers. (Stip. at 26.)

{¶ 24} 10. Relator saw Dr. Ewing-Wilson again on May 10, 2018 and reported that after 12 weeks of vestibular therapy her symptoms were improving, and she planned to return to work the following week. (Stip. at 33.)

{¶ 25} 11. Relator saw Dr. Lu on July 23, 2018 and reported that when she returned to work, her symptoms immediately worsened leading relator to consider filing for disability. (Stip. at 51.)

{¶ 26} 12. Seen again by Dr. Ewing-Wilson on March 14, 2019, relator reported a decrease in migraine frequency but continuing feelings of severe imbalance, still triggered by reading small print or walking in hallways. Relator reported that she had resigned from her teaching position at the end of the school year because of her inability to function in the school environment. (Stip. at 38.) Dr. Ewing-Wilson's report from this visit stated as follows:

> Migraines have resolved, but patient has persistent balance issues with motion and changes in position. Did well with vestibular therapy, but symptoms have returned despite doing exercises. Neurological exam is completely normal. She is going to apply for disability through the teacher's association.
>
> * * *
>
> [Recommendation]: I think you should see a neuro-otologist.

(Stip. at 42.)

{¶ 27} 13. Neurologist Alan Hoffer, M.D., evaluated relator on August 5, 2019 and reviewed her 2012 and 2017 MRI tests. Dr. Hoffer concluded it was unlikely that the Chiari malformation was the cause of relator's symptoms and referred her to a neuro-otologist.

(Stip. at 163.) Subsequent testing indicated that relator's symptoms were caused by atypical migraines not related to the Chiari malformation or a vestibular disorder. (Stip. at 165.)

{¶ 28} 14. Neurologist Assaf Shaikh, M.D., evaluated relator on February 5, 2020. Dr. Shaikh noted relator's previous normal MRI results and concluded that the Chiari malformation was small and did not explain her symptoms. (Stip. at 192.) Dr. Shaikh recommended continuing vestibular rehabilitation and inquiry into whether decompression could elevate symptoms. (Stip. at 192.)

{¶ 29} 15. Relator resumed vestibular therapy on February 21, 2020. (Stip. at 198.)

{¶ 30} 16. Three members of the STRS Medical Review Board reviewed relator's records to formulate a recommendation on her disability application.

{¶ 31} 17. Claire Wolfe, M.D., noted that Dr. O'Brien concluded that relator was not disabled. Dr. Wolfe personally concluded:

> [Relator] has symptoms of imbalance but without any neurologic ENT abnormalities on physical examinations or testing. She does not report falling or sustaining injuries. She continues to drive. Her school has made the accommodations she requested. There does not seem to be an objective reason why Ms. Joyce cannot continue teaching English.

(Stip. at 96.)

> 18. Mark Cooperman, M.D., opined that relator was not disabled:
>
> Despite her subjective symptoms, there are no objective findings, either on physical examination or extensive diagnostic testing, that would prevent her from performing her teaching duties. Currently, she is working three days a week at an elementary school library. It is my recommendation that her disability application be denied.

(Stip. at 97.)

{¶ 32} 19. James N. Allen, M.D., opined that based on relator's medical history and particularly the independent medical examination by Dr. O'Brien, relator did not suffer from an objective disabling condition:

> In summary, this STRS member has resolved vestibular migraines but still has subjective vertigo that is not accompanied by any objective evidence of impairment. I recommend that disability retirement be denied.

(Stip. at 95.)

{¶ 33} 20. By letter dated June 18, 2019, Martin J. Gottesman, M.D., on behalf of STRS' Medical Review Board, informed relator that it recommended a denial of disability benefits. (Stip. at 98.) STRS confirmed denial by the STRS board of disability benefits in a letter dated August 16, 2019. (Stip. at 222.)

{¶ 34} 21. Relator timely appealed the STRS board's decision. (Stip. at 225.)

{¶ 35} 22. Relator submitted additional medical records in connection with her appeal. Dr. O'Brien reviewed the additional materials and produced a report dated January 27, 2020. (Stip. at 177.) Dr. O'Brien indicated that after review of all additional medical records, he maintained his impression that there was no identifiable pathology in relator's ears or vestibular system to cause her symptoms, and relator was not physically or mentally incapacitated from her most recent job duties for 12 continuous months from the application time. (Stip. at 178.)

{¶ 36} 23. The Medical Review Board requested an additional examination of relator by Gerald Steiman, M.D., a neurologist. (Stip. at 262.) Relator saw Dr. Steiman on February 20, 2020 for a physical examination followed by Dr. Steiman's review of relator's medical records and job description. (Stip. at 180.) Noting conflicting opinions in the

medical record regarding the impact of relator's Chiari malformation, Dr. Steiman opined as follows:

> Ms. Joyce's history, medical record review, and physical exam provide sufficient credible evidence that she has a temporary impairment. The temporary impairment is due to her subjective complaints. Although her subjective complaints have not been substantiated by diagnostic studies, it is apparent that the appropriate diagnostic studies have not been performed. I would recommend Ms. Joyce undergo the appropriate diagnostic studies to assess whether or not her symptom complex is due to a symptomatic Chiari malformation. Once a firm diagnosis is noted, a further opinion will be forthcoming.

(Stip. at 183.)

{¶ 37} Dr. Steiman therefore concluded that relator would not be considered physically or mentally incapacitated from her most recent job duties for 12 continuous months, and recommended re-examination in 6 months.  (Stip. at 186.)

{¶ 38} 24. Relator provided additional documents for review by Dr. Steiman, who produced a second report dated April 14, 2020.  (Stip. at 203.)  Dr. Steiman noted that relator had begun vestibular therapy on February 21, 2020, the day following his previous February 20, 2020 exam.  (Stip. at 204.)  Dr. Steiman noted his prior conclusion of temporary impairment, and renewed his opinion as follows:

> Ms. Joyce's history, updated medical record review, and physical exam provide sufficient credible evidence that she is not disabled per the STRS Ohio definition of disability.

(Stip. at 204.)

{¶ 39} 25. Pursuant to a renewed request from the STRS Medical Review Board dated April 6, 2020, Dr. O'Brien also reviewed the additional medical records and again issued a recommendation dated June 2, 2020 that in his opinion, relator was not physically

or mentally incapacitated from her most recent job duties for 12 continuous months from the date of application.  (Stip. at 206-07.)

{¶ 40}  26.  Relator's medical records were again considered by three physicians for their recommendations to the Medical Review Board.  (Stip. at 208-13.)  Drs. Allen and Wolfe again concluded that relator had subjective vertigo without objective evidence of impairment and recommended denial of her disability application.  Dr. Cooperman concluded that relator's Chiari malformation was small, did not require surgical treatment, and was not thought to be responsible for her symptoms.  Dr. Cooperman further stated: "'It is my recommendation that her application for disability retirement be denied.'"  (Stip. at 211.)

{¶ 41}  27. Dr. Gottesman notified relator by letter dated June 5, 2020 that the Medical Review Board did not find evidence contrary to its previous decision and would again recommend denial, and the disability review panel would evaluate relator's appeal on the week of June 15, 2020.  (Stip. at 273.)

{¶ 42}  28. STRS informed relator by letter dated June 9, 2020 that her appeal hearing would be heard on June 17, 2020.  (Stip. at 275.)  STRS then granted a continuance request by relator's counsel but denied a request to submit additional medical information because the evidentiary deadline had passed.  (Stip. at 278-80.)

{¶ 43}  29. The STRS disability review panel heard relator's application on August 19, 2020.  (Stip. at 290.)  Relator testified by telephone.  Relator described her symptoms and their impact on her ability to perform her teaching duties.  The most significant effect was the limitation on her ability to read either printed material or computer screens.  Her ability to move about the classroom was impaired, even when she began using a rolling chair rather than walking.  She experienced six-week vertigo cycles

that would peak with episodes in which she could only stop the spinning sensations by dropping to the floor and curling up in a ball, which was unsafe for herself and her students. These episodes would leave her mentally impaired for the following week and one-half.

{¶ 44} Relator described her consultation with Dr. Steiman in very negative terms. She stated that Dr. Steiman had disparaged the opinions of her previous treating physicians and recommended an unrealistic referral to a specialist out of state and out of network, and he had exhibited coarse behavior and a rude, dismissive attitude throughout.

{¶ 45} The STRS board upheld its previous determination and denied relator's disability applications by order dated August 20, 2020:

> Based on the Disability Review Panel's conclusions and review of the entire medical record, on August 20, 2020, it was moved by Ms. Correthers, seconded by Dr. Hunt, that the previous position of the Retirement Board be affirmed and that disability benefits be denied.

(Stip. at 290.)

{¶ 46} 30. Relator filed her complaint in mandamus with this court on October 30, 2020.

{¶ 47} 31. The certified administrative record was filed on December 28, 2020.

{¶ 48} 32. On January 4, 2021, relator filed an additional submission consisting of the transcript of proceedings before the STRS board on August 19, 2020, which had been omitted from the administrative record.

Discussion and Conclusions of Law:

{¶ 49} In order to obtain a writ of mandamus from this court, relator must show a clear legal right to the requested relief, a clear legal duty on the part of STRS to provide such

relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Withers v. State Teachers Retirement Sys.,* 10th Dist. No. 17AP-124, 2017-Ohio-7906, ¶ 19. A clear legal right exists where the board abuses its discretion by entering an order that is not supported by some evidence. *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.,* 114 Ohio St.3d 147, 2007-Ohio-3760, ¶ 19. "'[T]he presence of contrary evidence is immaterial, so long as the 'some evidence' standard has been met."' *State ex rel. Am. Standard, Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. "'Only if the board's decision is not supported by *any* evidence will mandamus lie."' (Emphasis sic.) *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

{¶ 50} STRS has exclusive authority to determine if relator's application for disability benefits should be granted, and the board's decision is final. R.C. 3307.62(F); *State ex rel. Cydrus v. Pub. Emp. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, ¶ 12. The STRS board, not the physicians providing evidence, make the ultimate decision on disability. *State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26. In reviewing the evidence, "'the board is permitted to accept the findings presented in the medical reports yet still reject their ultimate conclusions, *id.*, and it is not required to explain its decision or even cite the evidence upon which it has relied."' *State ex rel. Wegman v. Ohio Police & Fire Pension Fund,* 155 Ohio St.3d 223, 2018-Ohio-4243, ¶ 16, citing *State ex rel. Tindira v. Ohio Police & Fire Pension Fund,* 130 Ohio St.3d 62, 2011-Ohio-4677, ¶ 30.

{¶ 51} Because there is no statutory right of appeal from a decision of the STRS board, relator possesses no adequate remedy in the ordinary course of the law. *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14.

{¶ 52} Ohio Adm.Code 3307:1-7-01 provides the definitional framework for disability benefits available to STRS members. Under Ohio Adm.Code 3307:1-7-01(K), "'A disabling condition shall be 'presumed to be permanent,' if it physically or mentally incapacitates an applicant from the performance of regular duty for a period of at least twelve months from the date of the retirement system's receipt of the completed application.'" Relator argues that medical opinions available to the board in this case do not constitute some evidence that relator fails to meet this standard.

{¶ 53} The magistrate finds to the contrary that there is some evidence in the administrative record to support the board's denial of disability benefits. Dr. O'Brien's two reports support the board's determination. Dr. O'Brien noted that MRI exams showed no masses or lesions, and he found no abnormalities in physical examination. Without identifiable pathology or objective testing based on specific abnormality, he concluded that relator was not disabled from any otolaryngologic pathology. (Stip. at 87.) After reviewing additional evidence, Dr. O'Brien continued to find that vertigo and imbalance were symptomatic without identifiable pathology, and he did not consider relator physically or mentally incapacitated for 12 continuous months from the application date. (Stip. at 178.)

{¶ 54} Relator argues that Dr. O'Brien's reports are internally inconsistent and flawed because Dr. O'Brien recommended that relator see a neurologist. Dr. O'Brien's recommendation does not undermine his conclusions with respect to disability, but illustrates his belief that further testing would be beneficial to relator, which is not the same thing.

{¶ 55} Dr. Steiman's report also supports the decision of the board. While Dr. Steiman recommended further diagnostic study to assess the impact of relator's Chiari malformation, he also noted that his neurological exam did not support a finding of

disability. Dr. Steiman's conclusion that temporary disability for six months was appropriate does not conflict with his conclusion that relator was not permanently disabled.

{¶ 56} Relator argues that the tenor of her interview with Dr. Steiman, as described in her testimony before the board, render his opinion equivocal, contradictory, and ambiguous. Dr. Steiman's conclusion, however, is not in any way ambiguous: "'Ms. Joyce's history, updated medical record review, and physical exam provide sufficient credible evidence that she is not disabled for the STRS definition of disability.'" (Stip. at 204.) The fact that Dr. Steiman noted inconsistent assessments by Drs. Shaikh and Hoffer of relator's Chiari malformation does not make his ultimate conclusion inconsistent merely because he notes inconsistent medical evidence in his review of relator's records.

{¶ 57} The evidence drawn from the reports of Dr. Steiman and O'Brien, and the review performed by Drs. Wolfe, Allen, and Cooperman, constitutes some evidence upon which the board could rely in denying relator's application for disability benefits. It is therefore the decision and recommendation of the magistrate that STRS did not abuse its discretion in denying relator's application, and that the writ of mandamus accordingly must be denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).