[Cite as *State ex rel. Wyse v. Ohio Pub. Emp. Retirement Sys.*, 2024-Ohio-314.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Gwendolyne J. Wyse,          :

        Relator,                                   :                    No. 22AP-25

v.                                                          :                    (REGULAR CALENDAR)

Ohio Public Employees Retirement System,  :

        Respondent.                            :

D E C I S I O N

Rendered on January 30, 2024

**On brief:** *Wasserman, Bryan, Landry & Honold, LLP, Francis J. Landry*, and *Katherine A. Pawlak Macek*, for relator.

**On brief:** *Dave Yost*, Attorney General, *Samuel A. Peppers, III*, and *Lisa A. Reid*, for respondent.

IN MANDAMUS

MENTEL, P.J.

{¶ 1} Relator, Gwendolyne J. Wyse, brought this original action seeking a writ of mandamus ordering respondent, the Ohio Public Employees Retirement System ("OPERS"), to vacate the order terminating her disability benefits. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate recommends that we deny the writ because some evidence in the record supported OPERS' decision to terminate Ms. Wyse's disability benefits.

{¶ 2} Ms. Wyse filed no objection to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision."

Civ.R. 53(D)(4)(c). Our review of the magistrate's decision reveals no error of law or other facial defect that would preclude adopting it. *See, e.g.*, *State ex rel. Alleyne v. Indus. Comm.*, 10th Dist. No. 03AP-811, 2004-Ohio-4223 (adopting the magistrate's decision where no objections filed). We agree with the magistrate's conclusion that some evidence supported OPERS' decision. Accordingly, we adopt the decision of the magistrate and deny the request for a writ of mandamus.

*Writ of mandamus denied.*

BEATTY BLUNT and LELAND, JJ., concur.

_____

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Gwendolyne J. Wyse, :

      Relator, :

v. :      No.  22AP-25

Ohio Public Employees Retirement System, :     (REGULAR CALENDAR)

Respondent. :

---

MAGISTRATE'S DECISION

Rendered on April 27, 2023

---

*Wasserman, Bryan, Landry & Honold, LLP, Francis J. Landry*, and *Katherine A. Pawlak Macek*, for relator.

*Dave Yost*, Attorney General, *Samuel A. Peppers, III,* and *Lisa A. Reid*, for respondent.

---

IN MANDAMUS

{¶ 3} Relator, Gwendolyne J. Wyse ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Public Employees Retirement System ("OPERS"), to vacate its order that terminated her disability benefits retroactive to the date on which she first applied for those benefits.

Findings of Fact:

{¶ 4} 1. Claimant was employed as a senior housing specialist for the Toledo Municipal Court and was a member of OPERS, which is a governmental entity responsible

for the administration of disability benefits offered to its members, as well as the adjudication of claims regarding disability benefits.

{¶ 5} 2. Claimant injured her knee while exercising. On May 13, 2013, she underwent a right-knee arthroscopy with a partial lateral meniscectomy.

{¶ 6} 3. On September 9, 2013, claimant completed an application for disability benefits from OPERS based upon chronic synovitis of her right knee with related symptomatology.

{¶ 7} 4. On December 23, 2013, Nabil Ebraheim, M.D., issued a report, in which he found claimant was permanently disabled from her former position of employment, finding the following: (1) claimant has right knee pain; (2) claimant can walk and stand occasionally; (3) claimant cannot return to work with the public employer; (4) claimant became permanently disabled from her current position on November 21, 2013; (5) claimant can work in any occupation; and (6) claimant can return to work with restrictions and/or limitations on January 21, 2014.

{¶ 8} 5. In a February 13, 2014, independent medical examination ("IME") report by MLS National Medical Evaluation Services ("MLS"), MLS found the following: (1) claimant is not permanently disabled at this time; (2) there are further treatment options available; (3) claimant is able to perform work activities with appropriate restrictions; (4) claimant is unable to return to her duties as per her job description; (5) there are treatment options that may significantly increase her functional abilities in the next 12 months; and (6) if claimant does not pursue further treatment, claimant would presumably be permanently disabled for the performance of her position of employment for the next 12 months.

{¶ 9} 6. In a letter dated April 17, 2014, OPERS denied claimant's application for disability benefits, finding that claimant is not permanently disabled from performance of her position of employment. Claimant appealed.

{¶ 10} 7. In a June 3, 2014, report, Dr. Ebraheim found the following: (1) prognosis for recovery from her conditions is poor; (2) claimant is restricted from lifting, carrying, pushing, walking, climbing, balancing, stooping, kneeling, crouching, crawling, reaching overhead, or standing.

{¶ 11} 8. In a September 9, 2014, IME report, Frederick Shiple, M.D., found the following: (1) claimant is permanently disabled from the performance of her position of employment; (2) despite continued care, it is unlikely that she will have a clinically significant change in her disabling condition over the next 12 months; and (3) claimant has presently exhausted her treatment options that would improve her conditions and allow her to return to her position of employment.

{¶ 12} 9. In an October 15, 2014, letter, OPERS approved claimant's appeal and granted her application for disability benefits, effective May 1, 2014.

{¶ 13} 10. In January 2015, claimant elected to participate in OPERS's disability benefit rehabilitative services, pursuant to R.C. 145.362, which provides that she would remain on leave of absence from her former position of employment and continue to be evaluated as to whether she was physically capable of returning to her former position of employment for five years from her effective benefit date.

{¶ 14} 11. A July 5, 2015, physical therapy note indicated claimant has difficulty negotiating stairs and can only ambulate 10 to 15 minutes before knee pain increases and she needs to sit and rest.

{¶ 15} 12. A December 2015 physical capacity form indicated claimant is restricted from lifting, carrying, pushing, balancing, stooping, kneeling, and crouching, and is able to only occasionally walk or climb.

{¶ 16} 13. On April 20, 2016, OPERS's third-party administrator, Managed Medical Review Organization ("MMRO"), determined claimant had reached clinical stability, meaning her condition was stabilized and unlikely to change substantially with or without medical treatment.

{¶ 17} 14. On April 26, 2019, MMRO notified claimant that because the statutory five years had passed, claimant would now be evaluated as to whether she was physically capable of returning to any position of employment under certain criteria.

{¶ 18} 15. On May 21, 2019, claimant underwent a functional capacity evaluation, which found the following: (1) claimant demonstrated physical ability within the sedentary physical demand level with the heaviest weight able to lift within the demand level being five pounds; (2) limitations noted with non-material handling tasks to include bending and should be restricted from squatting, kneeling, crawling, and climbing;

(3) limitations with material-handling tasks include lifting from all levels, two-hand carrying, and pushing; (4) balance impaired; (5) decreased right-knee and left-knee range-of-motion flexion and extension; and (6) decreased right hamstring/quadriceps muscle strength.

{¶ 19} 16. Thomas Lieser, M.D., performed an IME, and in a September 18, 2019, report found that claimant can perform work that is primarily sitting and ambulation as tolerated.

{¶ 20} 17. On October 25, 2019, MMRO issued a labor market vocational summary, in which it found the following: (1) claimant is employable under the Any Occupation review standard for an entry-level recruiter ("ELR"), which falls within claimant's skills, education, experience level, and physical capabilities as stated on her IME physical capacity form as a sit-down position that does not require any lifting; and (2) claimant can constantly reach-immediate, handle, finger, and sit.

{¶ 21} 18. In an August 26, 2020, IME report, W. Kent Soderstrum, M.D., found the following: (1) claimant sat, stood up from a seated position, and got up on the examination table with no apparent difficulty; (2) claimant ambulated with no apparent difficulty; (3) claimant ambulated without the need for any assistive devices; (4) claimant would be able to perform the job of ELR; and (5) the job tasks would allow claimant to perform a sedentary job with minimal lifting requirements, and the job satisfies all restrictions and/or limitations associated with the diagnosis of unilateral primary osteoarthritis, right knee.

{¶ 22} 19. On January 2, 2020, Samina Hasan, M.D., issued an attending physician's review of labor market survey, in which she indicated that she disagreed that claimant could perform the job duties of ELR because the listed job duties fall within the identified restrictions/limitations. She referred to her progress notes, that indicated claimant had chronic diarrhea since a reverse colostomy, constant abdominal pain, situational anxiety, and ventral hernia. Dr. Hasan also found claimant was unable to perform her duties because of recurrent diarrhea accentuated by anxiety.

{¶ 23} 20. On October 6, 2020, MMRO's medical director, Jeffrey Deitch, D.O., issued an Any Occupation report and recommendation, in which he found the following: (1) claimant is employable as an ELR; (2) the position falls within claimant's physical

capabilities as stated on her IME physical capacity form, as the position is a sit-down position and does not require any lifting; (3) claimant can constantly reach-immediate, handle, finger, and sit; (4) Dr. Soderstrum noted that the position as an ELR allows the member to perform a sedentary job with minimal lifting requirements; (5) Dr. Soderstrum noted that claimant complained of frequent diarrhea and constant abdominal pain; however, those complaints are not related to claimant's eligible diagnosis; (6) because a position was found that meets all statutory criteria under the Any Occupation review standard, it is determined that the member is employable; and (7) the recommendation is for discontinuation of benefits.

{¶ 24} 21. On October 8, 2020, OPERS's medical advisor, Maurice Mast, M.D., recommended that claimant's disability benefits be terminated.

{¶ 25} 22. On October 8, 2020, the OPERS board ("board") terminated claimant's disability benefits, effective January 1, 2021, finding that claimant was no longer permanently disabled under OPERS statutes. Claimant appealed.

{¶ 26} 23. In a December 15, 2020, report, Dr. Hasan found that claimant had headaches, diarrhea, insomnia, and muscle cramps.

{¶ 27} 24. On March 5, 2021, Aaron Fritz, D.O., performed an IME, and in his report, Dr. Fritz found the following: (1) claimant would be capable of completing the requirements of ELR; (2) although claimant has moderate arthritis in her right knee, she is able to ambulate and stand for brief periods; (3) the requirements of the position indicate that it is a desk position that involves the use of a computer and phone; (4) the employer has confirmed there is no lifting required for the position; (5) claimant had normal strength in her right knee with no gross instability, with the exception of a valgus instability that is common with a degenerative process; (6) she is able to stand and change positions without assistance and walk down a hallway without assistance; and (7) given the position is a desk position, claimant would be able to complete the necessary requirements for the position.

{¶ 28} 25. On April 21, 2021, OPERS affirmed its decision to terminate claimant's disability benefits.

{¶ 29} 26. On January 7, 2022, claimant filed a petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 30} The magistrate recommends that this court deny claimant's writ of mandamus.

{¶ 31} To prevail on her mandamus claim, claimant must establish, by clear and convincing evidence: (1) a clear legal right to the requested relief; (2) a clear legal duty on the part of OPERS to provide that relief; and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 140 Ohio St.3d 284, 2014-Ohio-3688, ¶ 13. This requires claimant to demonstrate that OPERS abused its discretion by making a decision that was not supported by some evidence. *State ex rel. Willer v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 20AP-316, 2021-Ohio-4575, ¶ 12. *See also Domhoff* at ¶ 14. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 20AP-21, 2020-Ohio-4147, ¶ 24.

{¶ 32} In mandamus, courts will not second guess the medical expertise of the doctor whose report is under review. *State ex rel. Smith v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 14AP-1060, 2016-Ohio-2731 (magistrate's decision), citing *State ex rel. Young v. Indus. Comm.*, 79 Ohio St.3d 484 (1997). The evaluation of the weight and credibility of the evidence before it rests exclusively with OPERS. *Id.,* citing *State ex rel. Thomas v. Indus. Comm.*, 42 Ohio St.3d 31, 33 (1989), citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987).

{¶ 33} The retirement system board, not physicians, makes the ultimate decisions regarding disability, and a physician's opinion is not conclusive. *See State ex rel. Sanderlin v. State Teachers Retirement Sys.*, 10th Dist. No. 21AP-210, 2022-Ohio-2032 (regarding State Teachers Retirement System of Ohio), citing *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26. The retirement system board is not required to accept the views of any particular doctor favored by the claimant, or give greater weight to the claimant's treating physicians. *Id.,* citing *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 24, 26. Ultimately, the existence of contrary evidence is immaterial if there is evidence in support of the retirement system board's findings of fact. *Sanderlin*, citing *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 9. Even

in the case of an independent examination at the retirement system board's request, the board is permitted to accept the findings presented in the medical reports yet still reject their ultimate conclusions. *Id.*, quoting *State ex rel. Joyce v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 20AP-507, 2021-Ohio-4279 (magistrate's decision), quoting *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 155 Ohio St.3d 223, 2018-Ohio-4243, ¶ 16.

{¶ 34} In the present case, claimant argues that she is entitled to an order granting her disability benefits. She first contests Dr. Deitch's October 6, 2020, report that recommended terminating her benefits because the position of ELR is a sit-down position that does not require any lifting. Claimant alleges the record contains the following evidence that contradicts Dr. Deitch's conclusion: (1) Dr. Ebraheim's December 23, 2013, report found she was permanently disabled from her current position on November 21, 2013, as she suffered from knee pain due to synovitis and bursitis, was restricted to lifting no more than 20 pounds, was able to walk or stand only occasionally, and was unable to climb, balance, stop, kneel, crouch, or crawl; (2) the February 13, 2014, IME by MLS found that if she did not get further treatment, she would be permanently disabled for the performance of her occupation as public employee for the next 12 months; (3) Dr. Ebraheim's June 3, 2014, report noted that prognosis for recovery was poor, and she was restricted from lifting, carrying, walking, climbing, balancing, stooping, kneeling, crouching, crawling, reaching overhead, and standing; (4) Dr. Shiple's September 9, 2014, IME report indicated that she was enduring pain and swelling of the knee, and she was permanently disabled from the performance of her own occupation; (5) the July 5, 2015, physical therapy note indicated that she had difficulty negotiating stairs and could only ambulate 10 to 15 minutes before needing to rest; (6) the December 2015 physical capacity form restricted her from lifting, carrying, pushing, balancing, stooping, kneeling, and crouching, and she was able to only occasionally walk or climb; (7) on April 20, 2016, MMRO determined she had reached clinical stability, meaning her condition was stabilized and unlikely to change substantially with or without medical treatment; (8) the May 2019 physical capacity form completed by MMRO did not recommend return to work and restricted claimant from climbing, kneeling, crouching, and crawling, with only occasional walking, balancing, stooping, reaching, sitting, or standing; and (9) in a

January 2, 2020, report, Dr. Hasan indicated that she cannot perform her listed job duties, and cannot perform a position that required standing, walking, bending, or squatting. Claimant also asserts that the decision relied in part on Dr. Soderstrum's faulty IME report, in which he accepted all of the findings of her treating physicians, yet he ignored the findings that restricted her sitting and determined she could perform a sedentary job with minimal lifting requirements.

{¶ 35} After reviewing the evidence before the commission and claimant's arguments before the court, the magistrate finds that there existed some evidence in the record to support the commission's order. Claimant contests the commission's reliance upon Dr. Deitch's October 6, 2020, report. In that report, Dr. Deitch explained why he recommended terminating benefits: claimant is employable as an ELR because (1) the position falls within claimant's physical capabilities, given the position is a sit-down position and does not require any lifting; (2) claimant is able to constantly reach-immediate, handle, finger, and sit; and (3) Dr. Soderstrum noted that the position allows claimant to perform a sedentary job with minimal lifting requirements. There is clearly some evidence to support the commission's conclusion that claimant was capable of performing the ELR position. Dr. Lieser found in his September 18, 2019, IME report that claimant can perform work that is primarily sitting and ambulation as tolerated. Dr. Soderstrum found in his August 26, 2020, IME report that claimant would be able to perform the job of ELR because the job tasks would allow claimant to perform a sedentary job with minimal lifting requirements, and the job satisfies all restrictions and/or limitations associated with the diagnosis of unilateral primary osteoarthritis, right knee. Furthermore, Dr. Fritz found in his March 5, 2021, IME report that claimant would be capable of completing the requirements of ELR, because it is a desk position that requires no lifting. Thus, all three IME physicians agreed with Dr. Deitch that claimant is capable of performing the ELR position and disability benefits should be terminated. Dr. Dietch came to the same conclusion as the three IME physicians.

{¶ 36} Furthermore, many of the reports cited by claimant that are allegedly contrary to Dr. Dietch's opinion are not in conflict; specifically, Dr. Ebraheim's December 23, 2013, and June 3, 2014, reports; the February 13, 2014, IME by MLS; Dr. Shiple's September 9, 2014, IME report; the July 5, 2015, physical therapy note; the

December 2015 physical capacity form; the April 20, 2016, MMRO report; and the May 2019 functional capacity evaluation. None of these more remote reports directly conflict Dr. Deitch's October 6, 2020, conclusion that benefits should be terminated because claimant is currently employable as an ELR.

{¶ 37} As for Dr. Hasan's January 2, 2020, report, in which she indicated that she disagreed that claimant could perform the job duties of ELR because the listed job duties fall within the identified restrictions/limitations, OPERS obviously found Dr. Deitch's report more credible and reliable, which is a determination that this court will not disturb absent an abuse of discretion. Claimant has shown no abuse of discretion. Furthermore, Dr. Hasan referred to her progress notes, which focus heavily on claimant's conditions of chronic diarrhea since a reverse colostomy, constant abdominal pain, situational anxiety, and ventral hernia. Dr. Hasan also found claimant was unable to perform her duties because of recurrent diarrhea accentuated by anxiety. These conditions are unrelated to her knee injury.

{¶ 38} Claimant also asserts that OPERS improperly relied in part on Dr. Soderstrum's faulty IME report because he claimed to accept all of the findings of the treating physicians yet ignored their findings that restricted her sitting. However, Dr. Soderstrum noted in his August 26, 2020, IME report that claimant sat, stood up from a seated position, got up on the examination table, and ambulated with no apparent difficulty or assistive devices. Thus, Dr. Soderstrum was able to personally view and evaluate claimant's physical abilities. Seven months later, Dr. Fritz confirmed Dr. Soderstrum's observations, finding that claimant was able to ambulate, stand, change positions, and walk down a hallway without assistance. For all of the above reasons, OPERS had some evidence to support its termination of benefits, and the order was not an abuse of discretion.

{¶ 39} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).