[Cite as *State ex rel. Martin v. Crawford*, 2025-Ohio-397.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mark A. Martin, | : | |
| Relator, | : | No. 24AP-139 |
| v. | : | (REGULAR CALENDAR) |
| Laylaa Crawford In Her Official Capacity As Hearing Officer for Ohio Parole Board, | : | |
| | : | |
| Respondent. | : | |

---

D E C I S I O N

Rendered on February 6, 2025

---

**On brief:** *Mark A. Martin,* pro se.

**On brief:** *Dave Yost,* Attorney General, *Salvatore Messina,* and *Adam Beckler,* for respondent.

---

IN MANDAMUS

MENTEL, J.

{¶ 1} Relator, Mark A. Martin, brings this original action in mandamus against respondent, Laylaa Crawford, in her official capacity as a hearing officer for the Ohio Parole Board ("parole board"). Martin seeks a writ of mandamus to vacate the parole board's finding that he violated the terms of his postrelease control and to enter an order finding insufficient evidence was present to find he committed the charged violation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. On October 23, 2024, the magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny relator's petition for writ of mandamus. The magistrate found there was

sufficient evidence presented by the Ohio Adult Parole Authority ("APA") in the record, if believed, to support the finding, by a preponderance of the evidence, that Martin knowingly or with reckless disregard had access to a firearm, thereby violating Rule 4 of the terms of his postrelease control. Because this postrelease control violation was supported by sufficient evidence and Martin does not contest the remaining violations, relator failed to establish a clear legal right to the requested relief or that respondent was under a clear legal duty to provide such relief.

{¶ 3} Relator did not file objections in this case. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). Our review of the magistrate's decision reveals no error of law or other facial defect that would preclude adopting it. *See, e.g., State ex rel. Wyse v. Ohio Pub. Emp. Retirement Sys.*, 10th Dist. No. 22AP-25, 2024-Ohio-314, ¶ 2, citing *State ex rel. Alleyne v. Indus. Comm.*, 10th Dist. No. 03AP-811, 2004-Ohio-4223 (adopting the magistrate's decision where no objections were filed).

{¶ 4} Accordingly, we adopt the magistrate's decision as our own, including findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's petition for a writ of mandamus.

*Writ of mandamus denied.*

BEATTY BLUNT and BOGGS, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mark A. Martin, | : | |
| Relator, | : | |
| v. | : | No.  24AP-139 |
| Laylaa Crawford In Her Official Capacity As Hearing Officer for Ohio Parole Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 23, 2024

*Mark A. Martin*, pro se.

*Dave Yost*, Attorney General, *Salvatore Messina*, and *Adam Beckler,* for respondent.

IN MANDAMUS

{¶ 5}   Relator Mark A. Martin has filed this original action in mandamus against respondent Laylaa Crawford in her official capacity as a hearing officer for the Ohio Parole Board ("parole board"). Martin seeks a writ of mandamus ordering Crawford to vacate the order finding Martin violated Rule 4 of the terms of his postrelease control and to enter an order finding insufficient evidence was presented to find Martin committed the charged violation. For the following reasons, the magistrate recommends denying the writ.

**I. Findings of Fact**

{¶ 6}    1. At the time of the filing of this action, Martin was an inmate incarcerated at the Lorain Correctional Institution in Grafton, Ohio.

{¶ 7}    2. Crawford is a hearing officer of the parole board. In that capacity, Crawford presided over Martin's postrelease control violation hearings on December 28, 2023 and January 4, 2024.

{¶ 8}    3. The parole board is an administrative section of the Ohio Adult Parole Authority ("APA"), which itself is a bureau-level administrative section of the Division of Parole and Community Services, which in turn is a division of the Ohio Department of Rehabilitation and Correction ("ODRC"). *See* R.C. 5149.02.

{¶ 9}    4. On November 21, 2023, Martin was arrested for allegedly violating the terms of his postrelease control. Martin was charged with the following violations:

> RULE 1 [Count 1].: On or about 11/21/2023, in the vicinity of Middletown, Ohio, you had in your possession or under your control methamphetamine.
>
> RULE 1 [Count 2].: On or about 11/21/2023, in the vicinity of Middletown, Ohio, you had in your possession or under your control, drug paraphernalia.
>
> RULE 4 [Count 1].: On or about 11/21/2023, in the vicinity of Middletown, Ohio, you had in your possession or under your control a firearm.
>
> RULE 4 [Count 2].: On or about 11/21/2023, in the vicinity of Middletown, Ohio, you knowingly or with reckless disregard, had access to a firearm.

(Respondent's Evid. at 1.)[1]

{¶ 10} 5. On December 28, 2023, Crawford held a postrelease control violation hearing.[2] Martin was present at the hearing and represented by counsel. Crawford read the charged violations on the record at the hearing. Martin verbally denied committing all charged violations.

---

[1] References to counts for the charged violations of Rule 1 and Rule 4 have been added to the quoted text for clarity. These references correspond to those used by the parole board hearing officer in the January 4, 2024 notice of findings of release violation hearing.

[2] An audio recording of the postrelease control violation hearing was submitted with respondent's presentation of evidence as Exhibit B. Exhibit B was split into two parts or separate audio recording files, one for the hearing on December 28, 2023 and the other for the hearing on January 4, 2024.

{¶ 11} 6. Parole Officer Popp, who represented the APA at the hearing, testified and entered into evidence his body camera footage,[3] ten photographs, and Martin's conditions of supervision.[4] According to Officer Popp, after Martin was released, he lived at the residence of his brother, Jon Baker. Officer Popp stated that Martin was "approved" to live at the residence. (Respondent's Evid. Ex. B, Pt. 1 at 22:18-22:22.) As part of the approval process, it was indicated to the APA that there were no firearms present at the residence.

{¶ 12} As reflected in the body camera footage and Officer Popp's testimony, Officer Popp conducted a search of Martin's approved residence on November 21, 2023. While another parole officer searched Martin's bedroom, Officer Popp searched the living room of the residence. Describing the living room as a "common area" or "shared area," Officer Popp distinguished the room from a "private bedroom." (Respondent's Evid., Ex. B, Pt. 1 at 18:14-18:29.) Officer Popp stated that the front door of the residence entered into the living room and the kitchen was entered from the living room. Officer Popp stated that he had "done visits where Mr. Martin has been on that couch" in the living room and had "talked to [Martin] in that living room." (Respondent's Evid., Ex. B, Pt. 1 at 18:18-18:23.)

{¶ 13} On the coffee table in the living room, Officer Popp found drug paraphernalia and a silicone container containing a substance that Officer Popp believed was methamphetamine residue. Officer Popp detained and searched Martin. Officer Popp did not find any contraband on Martin's person.

{¶ 14} In a storage compartment inside the coffee table, which was accessed by lifting the top of the coffee table, Officer Popp found an unsecured, loaded firearm inside an unlocked case. Officer Popp agreed the firearm was not in plain view where it was located inside the coffee table. Martin told Officer Popp that the coffee table belonged to his brother.

{¶ 15} In the same area inside the coffee table where the firearm was found, Officer Popp also found a baggie containing a substance that he believed to be methamphetamine.

---

[3] Officer Popp's body camera footage was submitted with respondent's presentation of evidence as Exhibit C.
[4] Though they were admitted into evidence at the postrelease control hearing, the photographs introduced by Officer Popp and the conditions of supervision that, according to Officer Popp, were signed by Martin on August 2, 2023, do not appear in the record of this matter. Furthermore, Officer Popp referred to a violation report that was described by respondent Crawford as being "already on the record." (Respondent's Evid., Ex. B, Pt. 1 at 17:40-17:43.) No such violation report appears in respondent's presentation of evidence. Regardless, considering Martin's contentions, the omission of such records is not dispositive under the facts and circumstances present in this case.

A field test of the substance recovered during the search rendered a positive result for methamphetamine. As reflected in Officer Popp's body camera footage, which was played at the hearing, Officer Popp inquired regarding whether Martin had been using methamphetamine:

> Officer Popp: Would you be dirty for meth today?
>
> Martin: I should not. I should be clean * * * I mean I may have a little something in me * * *
>
> Officer Popp: A little something what?
>
> Martin: I may have a little meth, but I'm trying to get completely good on everything.

(Respondent's Evid., Ex. C at 4:22-4:33.) Officer Popp testified that another parole officer administered a drug test to Martin after his arrest. According to Officer Popp, Martin "tested positive for several things including amphetamines and I think fentanyl." (Respondent's Evid., Ex. B, Pt. 1 at 24:25-24:32.)

{¶ 16} 7. Parole Officer Westmeyer testified at the postrelease control violation hearing that she was present with Officer Popp at the visit to Martin's residence on November 21, 2023. Officer Westmeyer stated that she participated in the administrative search of the home. While Westmeyer searched Martin's bedroom, Officer Popp searched the living room. According to Officer Westmeyer, Officer Popp found an unsecured handgun, drug paraphernalia, and a substance appearing to be methamphetamine inside the coffee table in the living room.

{¶ 17} Officer Westmeyer testified that she had visited Martin at the residence prior to the search on November 21, 2023. During the prior visit, Martin and his brother were both at the residence in the living room, which Officer Westmeyer described as a "shared space." (Respondent's Evid., Ex. B, Pt. 1 at 27:50-28:00.)

{¶ 18} 8. Martin, through counsel, called Baker as a witness. Baker stated that he slept on the couch in the living room because he did not yet have a bed at the residence. Martin slept in a bedroom in the residence.

{¶ 19} Baker testified he told Officer Popp that the firearm found in the residence belonged to him. Either before or while Martin was living with Baker, Baker admitted that Officer Popp informed him that firearms were not permitted in the residence while Martin was living there. Initially, Baker kept the firearm at his prior residence and then placed the

firearm in his car. Baker brought the firearm into the residence approximately four or five days before Officer Popp discovered it during the November 21, 2023 search. Baker did not know exactly where the firearm was located at the time it was discovered during the search, but stated that he placed the firearm in the coffee table when he brought it into the residence. Baker stated that the firearm was in a case when he put it in the coffee table.

{¶ 20} Baker testified that he did not know whether Martin was aware that the firearm was in the residence. Baker testified that he never spoke to Martin about the firearm and never saw Martin handle the firearm. On cross-examination, Baker said that he "may have" previously told Officer Popp that he left the firearm unloaded. (Respondent's Evid., Ex. B, Pt. 1 at 42:05-42:07.) Baker testified that he thought the firearm was unloaded when he put it away, but was not certain. Officer Popp then asked Baker about a statement Baker allegedly made to Popp regarding whether Martin may have loaded the firearm:

> Officer Popp: When I talked to you, you said that it was possible that he may have slid the magazine inside the gun?
>
> Baker: Well, I said that—I can—I can say this—I never seen him with the gun.
>
> * * *
>
> Officer Popp: You said to me when—did you say that he may have slid the magazine into the gun because you knew it was unloaded?
>
> Baker: I thought I had left it unloaded, yes.

(Respondent's Evid., Ex. B, Pt. 1 at 42:20-42:48.)

{¶ 21} 9. On January 4, 2024, another postrelease control violation hearing was conducted. At the hearing, respondent Crawford found Martin guilty of both counts of the Rule 1 violation and Count 2 of the Rule 4 violation; Martin was found not guilty of Count 1 of the Rule 4 violation. Crawford issued Martin a sanction of imprisonment for a term of 224 days and imposed an additional requirement that Martin complete a substance abuse assessment and programming if indicated. (Respondent's Evid., Ex. B, Pt. 2 at 8:40-8-53.) On the same date, Crawford issued a notice of findings of release violation hearing ("notice of findings"). The notice of findings contained the following conclusion:

> After examining and weighing all the evidence presented, such as the [body camera] footage and assessing the credibility of the witnesses, there is substantial evidence to demonstrate that the supervisee violated rule 1 (all counts)

and rule 4 count 2 beyond a preponderance of evidence. The supervisee is not guilty of rule 4 count 1.

(Respondent's Evid. at 2.)

{¶ 22} 10. Martin commenced this action by filing a petition for writ of mandamus on February 22, 2024. Attached to Martin's petition was a copy of the January 4, 2024 notice of findings and a document purportedly reflecting Martin's sanction receipt and prison term order resulting from the January 4, 2024 notice of findings. In his petition, Martin sought a writ of mandamus ordering respondent Crawford to vacate the order finding that Martin violated the terms of his postrelease control and to enter an order finding that insufficient evidence was presented to find Martin was guilty. Martin also requested that this court order Crawford to "release [Martin] with original conditions of parole in place after a finding of insufficient evidence to support the charges." (Petition at 17.) Finally, Martin requested any other relief to which he may be entitled, including jail-time credit.

{¶ 23} 11. On March 19, 2024, respondent Crawford filed a motion to dismiss in which it was asserted that Martin's petition was subject to dismissal for lack of compliance with the inmate filing requirements in R.C. 2969.25.

{¶ 24} 12. On May 3, 2024, a magistrate's order was issued denying respondent's motion to dismiss.

## II. Discussion and Conclusions of Law

{¶ 25} Martin asserts entitlement to the requested writ of mandamus because insufficient evidence was presented to support finding he violated Rule 4 of the terms of his postrelease control.

### A. Due Process Requirements in Release Revocation Proceedings

{¶ 26} The Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution provide guarantees of due process of law. *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.*, 87 Ohio St.3d 325, 331 (1999) ("The Fourteenth Amendment to the United States Constitution prohibits any state from depriving 'any person of life, liberty, or property, without due process of law.' "); *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 422 (1994), citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540,

544 (1941) (stating that the Ohio Constitution's " 'due course of law' provision" in Article I, Section 16 "is the equivalent of the 'due process of law' provision in the Fourteenth Amendment to the United States Constitution"). The revocation of release due to a postrelease control violation, like the revocation of parole, implicates a liberty interest and is, therefore, subject to certain procedural protections. *State ex rel. Barber v. Hoying*, 10th Dist. No. 23AP-71, 2023-Ohio-2204, ¶ 11. *See also Morrissey v. Brewer*, 408 U.S. 471, 484 (1972); *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 32, 2022-Ohio-1559, ¶ 18.

{¶ 27} Notably, "an individual subject to a revocation proceeding is not entitled to all the procedural rights accorded to a defendant in a criminal trial." *Barber* at ¶ 12. *See also Morrissey* at 480 (stating that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* at 481. "The minimal requirements of due process in revocation proceedings include, but are not necessarily limited to, the following: (1) written notice of the alleged violations; (2) disclosure to the person subject to revocation of the evidence against them; (3) an opportunity to be heard in person and to present witnesses as well as documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer finds good cause to prohibit it; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to the evidence relied on and the reasons for revocation." *Barber* at ¶ 12, citing *State v. Cardinal*, 10th Dist. No. 09AP-623, 2010-Ohio-3836, ¶ 15. *See also* Ohio Adm.Code 5120:1-1-18(A)(5) (listing other rights for a releasee at a postrelease control release revocation hearing).

{¶ 28} Additionally, a postrelease control violation finding that results in the revocation of release must be based on sufficient evidence in order to satisfy the requirements of due process. *See Barber* at ¶ 27; *State ex rel. Braddy v. Hoying*, 10th Dist. No. 23AP-197, 2023-Ohio-2597, ¶ 20. *See also Mango* at ¶ 18. A decision finding that a releasee has violated the terms of postrelease control is supported by sufficient evidence where there exists "substantial evidence" to support the decision. *Mango* at ¶ 18. Substantial evidence exists where "the evidence presented by the APA, if believed, is

sufficient to satisfy the burden of proof." *Id*. At release revocation proceedings for a postrelease control violation, a violation must be established by the preponderance of the evidence. *Braddy* at ¶ 21; Ohio Adm.Code 5120:1-1-18(A)(3). Thus, there exists sufficient evidence to support a finding of a postrelease control violation where the evidence presented by the APA, if believed, demonstrates the violation by a preponderance of the evidence. *Id*.

## B. Mandamus

{¶ 29} A writ of mandamus is an extraordinary remedy " 'issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty.' " *State ex rel. Russell v. Klatt*, 159 Ohio St.3d 357, 2020-Ohio-875, ¶ 7, quoting R.C. 2731.01. *See State ex rel. Blachere v. Tyack*, 10th Dist. No. 22AP-478, 2023-Ohio-781, ¶ 13 (stating that the purpose of mandamus is to compel the performance of an act that the law specifically enjoins as a duty resulting from an office, trust, or station). In order for a writ of mandamus to issue in this matter, Martin must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, ¶ 19. " 'Clear and convincing evidence' is a measure or degree of proof that is more than a preponderance of the evidence but less than the beyond-a-reasonable-doubt standard required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the fact sought to be established." *State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, ¶ 14, citing *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. A writ of mandamus may issue where an individual establishes that a postrelease control violation resulting in the revocation of release was based on insufficient evidence in violation of due process. *Braddy* at ¶ 20, citing *Barber* at ¶ 11.

## C. Analysis

{¶ 30} Martin was found to have committed three violations of the terms of his postrelease control: two counts of violating Rule 1, and one count of violating Rule 4. Initially, it is noted that Martin, in his brief in this matter, does not challenge the findings

that he violated Rule 1 of the terms of his postrelease control. As a result, the magistrate will not address those findings related to the violations of Rule 1. *See generally State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 57 (reaffirming holdings that the relator bears the burden of proving entitlement to a writ of mandamus by clear and convincing evidence); *State ex rel. Preschool Dev., Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003-Ohio-3999, ¶ 12.

{¶ 31} Martin asserts a writ of mandamus should issue because there was insufficient evidence to find he committed a violation of Rule 4 of the terms of his postrelease control. Martin argues that "there was no evidence supporting a finding of actual knowledge or possession regarding the firearm in question." (Martin's Brief at 5.) Martin also argues there was insufficient evidence to prove that he knowingly had access to a firearm.

{¶ 32} As this court explained in *Barber*, a person may knowingly possess an object through either actual or constructive possession. *Id.* at ¶ 16, citing *State v. Walker*, 10th Dist. No. 14AP-905, 2016-Ohio-3185, ¶ 63. "A person has actual possession of a substance or object 'when it is within [their] immediate physical control.' " *Walker* at ¶ 63, quoting *State v. Coffman*, 5th Dist. No. 07 CA A 08 0042, 2008-Ohio-2163, ¶ 25.

{¶ 33} Constructive possession exists "when an individual knowingly exercises dominion and control over an object," regardless of whether that object is within the person's immediate physical control. *State v. Hankerson*, 70 Ohio St.2d 87 (1982), at paragraph one of the syllabus. However, "the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession." *Id.* at 91. Instead, "[i]t must *also* be shown that the person was *conscious of the presence of the object.*" (Emphasis added.) *Id.* More than one person may be found to have joint constructive possession of an item. *Barber* at ¶ 18. *See State v. Philpott*, 8th Dist. No. 109173, 2020-Ohio-5267, ¶ 67; *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976) (stating that possession may be "individual or joint, actual or constructive," but "[p]roof of control or dominion," through self or instrumentality of another, "is essential").

{¶ 34} Following *Hankerson*, Ohio courts have repeatedly considered the threshold for establishing constructive possession in cases involving firearms. This court has held that "[c]onstructive possession of a firearm exists when a defendant knowingly has the power

and intention at any given time to exercise dominion and control over a firearm, either directly or through others." *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 32, citing *United States v. Clemis*, 11 F.3d 597, 600 (6th Cir.1993). Furthermore, "[p]ossession of a firearm 'may be inferred when the defendant has exercised dominion and control over the area in which the firearm is found.' " *State v. Dodson*, 10th Dist. No. 17AP-541, 2019-Ohio-2084, ¶ 21, quoting *State v. Williams*, 10th Dist. No. 97APA02-255, 1997 Ohio App. LEXIS 4467 (Sept. 30, 1997).

{¶ 35} In this case, actual knowledge or possession is not at issue. Martin was found not guilty of Count 1 of the Rule 4 violation, in which it was alleged Martin had a firearm in his possession or under his control. Rather, Martin was found to have committed Count 2 of the Rule 4 violation, in which it was alleged that Martin knowingly or with reckless disregard had access to a firearm. As a result, it is not necessary to further address Martin's contentions regarding actual knowledge or possession.

{¶ 36} There is sufficient evidence in the record to support finding by a preponderance of the evidence that Martin knowingly or with reckless disregard had access to a firearm, thereby violating Rule 4 of the terms of his postrelease control. It is undisputed that Officer Popp located a firearm in the living room of the residence where Martin was staying on November 21, 2023. This room was described as a common area that was accessed from the front door of the residence. In at least one visit to the residence prior to November 21, 2023, Officer Popp interacted with Martin in the living room. Furthermore, the firearm was not in a locked or secured container, but was accessible to anyone within reach of the coffee table in the living room by opening the coffee table and the container within which the firearm was stored. While there is no dispute that the firearm was not in plain view in the living room, other evidence supports finding that Martin was aware of the firearm.

{¶ 37} As reflected in the testimony at the postrelease control violation hearing and the body camera footage admitted into evidence, Officer Popp found a substance on the coffee table in the living room that was identified as methamphetamine. Additional methamphetamine was found in a baggie inside the coffee table—the same area where the firearm was located. In response to questioning from Officer Popp on the day of the search, Martin indicated he may test positive for methamphetamine. Officer Popp stated that

Martin tested positive for prohibited substances including "amphetamines" following his arrest. (Respondent's Evid., Ex. B, Pt. 1 at 24:25-24:32.) Additionally, although Baker stated that he never observed Martin with the firearm and did not recall telling him about it, Baker also told Officer Popp that he believed the firearm was unloaded, but indicated that Martin may have loaded it.

{¶ 38} This evidence, when viewed in a light most favorable to the APA, as required under a sufficiency analysis, is sufficient to support finding that Martin was aware of the firearm and the firearm was located within premises under Martin's control. *See Dodson*, 2019-Ohio-2084, ¶ 22 (finding evidence sufficient to support constructive possession where firearms found in the apartment where the appellant had been residing and appellant's credit card was located on the same couch where the firearms were located); *Walker*, 2016-Ohio-3185, at ¶ 74 (finding testimony that "firearm was located in close proximity to the drugs (i.e., in the same dresser drawer) provided evidence to support a finding that the weapon was under appellant's control during the commission of the felony offense"). Therefore, the magistrate finds the evidence presented by the APA, if believed, was sufficient under the preponderance of the evidence standard to find that Martin knowingly or with reckless disregard had access to a firearm, thereby committing Count 2 of the Rule 4 violation. Because this postrelease control violation was supported by sufficient evidence and Martin does not contest the remaining violations, Martin has failed to establish a clear legal right to the requested relief or that respondent Crawford was under a clear legal duty to provide such relief.

**D. Conclusion**

{¶ 39} Accordingly, it is the decision and the recommendation of the magistrate that Martin's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.